KIRBY and Wife *against* TAYLOR and others.

*It seems,* that a *release* given by a *ward*, six months after she comes of age, to her *guardian*, freely and fairly, without any fraud, mis-representation, or undue means to obtain it, is valid.

Such a *release*, given by a *ward*, without the knowledge or consent of the *surety* who had executed a bond with the *guardian*, by order of the Surrogate, is a discharge of the *surety* from the bond ; and may be pleaded by him in bar of a suit brought by the *ward* against such guardian and the surety, for an account, &c.

Where two or more persons are jointly and severally bound, in one obligation, a *release* of one obligor entirely discharges the rest at law ; but not strictly so in equity : for equity will not extend the operation of a release beyond the clear intention of the parties, and the justice of the case, but will construe it to relate to the particular matter intended to be released. Thus, where *A.*, *B.* and *C.*, *guardians*, executed a bond, jointly and severally, with *T.*, as their *surety*, for the faithful performance of their guardianship ; and the *ward*, after coming at full age, executed a *release* to *A.*, adding, " But this release is not to apply to or affect my claims against *B.*, my acting guardian, and whose account remains unsettled :" *Held*, that the *release*, as to *A.*, was good, and was also a good defence to *T.*, so far as he was a surety for *A.* ; but that he remained bound for *B.* and *C.*, the other two obligors.

Where a plea is ordered to stand for an answer, it is to be deemed sufficient, as far as it covers the bill ; but the plaintiff may still except to the residue of the answer.

Leave to withdraw the plea denied, but the defendant allowed to answer as to the discovery and relief sought, but not to insist on the release, which had been pleaded in his answer, so far as the same had been overruled by the plea.

*May 28th, and*
*August 12th.*

JOHN TURNER, jun. father of *Maria*, wife of the plaintiff, *Joseph Kirby*, died in 1801, having first made a will, by which he devised all his estate, real and personal, to his wife, and his two children, *Archibald* and *Maria*, in fee, to be divided when his son *A.* should arrive at the age of 21 years; and appointed *James Dunlap*, and *John*

*Thompson,* his executors. *A. Turner,* the son, became of age in 1803 ; and the plaintiff, *Maria,* being then only six years of age, *James Dunlap, John Thompson,* and *Archibald Turner,* were appointed her guardians, by the Surrogate of the city of *New-York;* and they, with *John Taylor,* as their surety, executed a bond, jointly and severally, to the plaintiff *Maria,* conditioned for the faithful performance of their duty by the guardians, and that they render a just account, when required, to any competent Court. That *James Dunlap,* one of the guardians, died intestate, in *June,* 1809, leaving three children, *James, William,* and *Jane ;* and the defendant, *John Mowatt,* junr. adminis- tered on the estate ; that the intestate left real and per- sonal estate to the amount of 100,000 dollars. That the plaintiff, *Maria,* became of age the 25th of *November,* 1817. That in *June,* 1818, the defendant, *Thompson,* de- livered to the plaintiff. *M.,* a bundle of papers, purporting to contain accounts of his guardianship, and certain deeds, papers, and securities for money ; and, also, a *release* to him individually, which he requested her to sign, alleging, that he had faithfully discharged his trust. That she, having the fullest confidence in him, without opening the bundle of papers, executed the release, without counsel. That she was, at the time, ignorant that the bond given by her guardians, by order of the Surrogate, was joint and several, or that the guardians had given any surety ; and that she had no intention of relinquishing her claim against her brother, *A. T.,* or his sureties. That when she came to open and examine the bundle, she found that it contained a deed from her brother *A. T.,* of a moiety of a house in *Pearl-street,* &c., (setting forth other property,) the whole amounting, on the 25th of *November,* 1817, to 21,930 dollars and 84 cents, &c. That the bundle con- tained loose receipts and memoranda, but no account of the guardianship, nor any documents from which an ac- count could be stated, from the 17th of *August,* 1807.

That the plaintiffs intermarried the 9th of *December*, 1818. That after making all deductions, allowances for education and maintenance, and without calculating arrears of interest, there was now due to the plaintiff *M.*, from her guardians, above the sum of 10,000 dollars ; that the defendants pretend, that *J. Thompson* was discharged from the bond executed by him as guardian, by the *release* executed by her, and that the same *release* operated to discharge the other defendants.   But she insisted, that the release, under the circumstances in which it was taken, ought not to bar her from claiming a true account from her guardians, or to protect either of the defendants from their responsibility under the bond.   *Prayer*, that the defendants, *A. Turner*, and *J. Thompson*, be decreed to render a full and true account to the plaintiffs of their guardianship, and to pay to the plaintiffs what may be found due ; and that the defendants, notwithstanding the release, be decreed to pay, as sureties upon the bond, what may be found due, and that the release be delivered up to be cancelled, and for general relief.

The defendant, *Taylor*, put in a *plea* and *answer*.   The plea alleged, that after the plaintiff, *M.*, came of age, and before her marriage, to wit, on the 5th of *June*, 1818, she freely and voluntarily, and without the knowledge or consent of the defendant, executed and delivered to *John Thompson*, a principal in the bond, a *release*, in the following words : " I do hereby acknowledge, that Mr. *John Thompson*, one of my guardians, has fully settled and accounted with me for any claims or demands I have against him as such guardian, and I do hereby release and discharge him of, and from, all claims against him ; but this release is not to apply to, or affect my claims against my brother, *Archibald Turner*, who has been my acting guardian, and with whom my account yet remains unsettled." That the plaintiff executed the release of her own free will, without any fraud, threat, persuasion, concealment,

or misrepresentation, by, or on the part of the said *J.*
*Thompson*, and with full intent to release and discharge
him, one of the principals in the bond, from the bond, and
of and from all liability by means thereof.   That the re-
lease of *J. Thompson*, a principal, is a release of the de-
fendant, as surety, of and from the said bond, and he
pleaded the release in bar.   The defendant *answered*, also,
in support of the plea, that he was requested by *J. Thomp-
son* to become security for him as guardian, and he so ex-
ecuted the bond; but he did not execute it with any intent
to become surety for the defendant, *Turner*, and *James
Dunlap*, now deceased, or for either of them.   That the
plaintiff *M.*, on the 5th of *June*, 1818, with intent to re-
lease the said *J. Thompson* from the said bond, without the
consent or knowledge of this defendant, executed the said
release.   That before she executed it, she fully investigated
the state of her concerns with her surviving guardians,
*Turner* and *Thompson*, and, with full knowledge thereof,
voluntarily offered to release the defendant *Thompson*, of,
and from all demands, and did execute and deliver the re-
lease to him, without any condition imposed, or surprise,
fraud, or improper practice used by him to obtain the
same.   That the plaintiff, *M.*, was of competent age, and
capable to act for herself.   That she retained the release
one day for deliberation, and then executed it; and the
defendant insisted, that as he was a mere surety in the
bond, the release of *Thompson*, a principal, was a release of
him, this defendant.

*June* 1, 1821.   The cause came on to be heard on the
bill, and the plea and answer of the defendant *Taylor*.

*Slosson* and  *C. Baldwin*, for the defendant *Taylor*.
They stated the following points : 1. That a release by a
ward, after attaining full age, was proper, in itself.
2. That such release can only be impeached on the

*1822.*

*KIRBY*
*v.*
*TAYLOR.*

ground of positive fraud, and it did not, in its effect, operate as a gratuity to the guardian, so as to bring it within the principle of those cases in which grants and gifts to a guardian are avoided, on the ground of public utility.

3. That there is no fraud charged in the bill; nor is it pretended, that the defendant, *Thompson*, ever received any part of the estate of the ward, or intermeddled with it; but, on the contrary, it appeared, that the whole personal estate, and all the rents and profits of the real estate, were received by her brother, *Archibald Turner*, who was the sole acting guardian, and a tenant in common of the real estate.

4. That the defendant *Taylor*, is not liable for the separate receipts and acts of his co-guardian; and that if a legal liability existed, being without gain or profit to himself, he is entitled to avail himself of every legal advantage for his discharge.

5. That the release of the principal is, also, a valid release of the surety.

6. That a release which is sought to be avoided, may be pleaded.

The counsel cited 7 *Johns. Rep.* 207. 1 *Atk.* 294. 1 *Madd. Ch.* 103. 3 *P. Wms.* 317. *Skinner's Rep.* 148. 2 *Vesey*, 547. 9 *Vesey*, 292. 13 *Vesey*, 137. 3 *P. Wms.* 315. 2 *Vesey*, jr. 678. 4 *Vesey*, 608. 829. 5 *Vesey*, 331. 7 *Vesey*, 197, 198.

*Harison* and *Robinson*, contra, insisted, 1. That the release was executed by the plaintiff *M.*, under the influence of the relationship of guardian and ward, in blind confidence, improvidently, and in ignorance of her rights; and ought, therefore, to be set aside.

2. That the plea is defective, inasmuch as it does not negative the grounds on which the release is sought to be set aside.

3. That the plea ought to stand for an answer, with liberty to except.

They cited 1 *P. Wms.* 119. 3 *P. Wms.* 131. 317. 4 *Vesey,* 596. 622. *Mitf. Pl.* 205, 206. 208. 6 *Vesey,* 594. 1 *Bro. P. C.* 372.

THE CHANCELLOR considered the plea a good bar, and ordered the bill, as to the defendant, *Taylor,* to be dismissed, &c. A *rehearing* was, afterwards, granted, on the petition of the plaintiff; and the cause was reheard, on the same pleadings, the 28th of *May* last.

*Baldwin* and *Slosson,* for the plaintiffs. They cited 10 *Johns. Rep.* 594. 7 *Johns. Rep.* 332. 2 *Vesey,* jr. 540.

*Harison* and *J. Duer,* for the defendant, *Taylor.* They cited 1 *Vesey,* sen. 507. 2 *Vesey,* sen. 310. 1 *Vernon,* 12. 1 *Equ. Cases Abr.* 170. 1 *Lev.* 101. 16 *Johns. Rep.* 116. *Mitf. Pl.* 240. *Newland's Pr.* 45.

*August* 12th. The cause stood over for consideration until this day.

THE CHANCELLOR. The cause was set down for rehearing upon the plea of the defendant, *Taylor,* with its accompanying answer.

There is no charge in the bill, that the release, which is the subject matter of the plea, was unfairly or fraudulently procured. The plea avers, that it was given voluntarily and of free will, without any fraud, threat, persuasion, concealment, or misrepresentation, and without the knowledge or consent of *Taylor,* the surety, and the answer contains the same averments. The plea is, therefore, good, in point of form; and the great question in the case is, whether the release, under the circumstances, be valid; and, if so, then, to what extent.

1. I think it was a valid release in respect to *Thompson*, the guardian, and, consequently, to *Taylor*, his surety. It was undoubtedly intended to discharge *Thompson*, and was fairly and freely given, (for so we must intend from the case,) by a ward, six months after coming of age, without any undue means to procure it. If a release, so given, can be good in any case, it must be good in this case, and there is no principle of the Court that goes so far as to overturn every such release. There is a wide difference between a discharge, and a gratuity or bounty, given in remuneration of an antecedent duty ; and the jealousy of the Court, and the maxims of public policy, have been specially and pointedly directed against the acquisition of gain on the part of the guardian, and not to a fair settlement, or a voluntary discharge of him. Such a proceeding is the natural and usual course on the termination of the trust. In *Hylton* v. *Hylton*, 2 *Vesey*, 547. and *Hatch* v. *Hatch*, 9 *Vesey*, 292. Lord *Hardwicke* and Lord *Eldon*, with much energy of expression, and with a very determined purpose, cast the protection of the Court over the acts of the ward ; but the guardian, in each of these cases, had procured donations of property. In the first case, the guardian had procured from the ward, on his coming of age, the grant of an annuity, as well as a general release, on the delivery of several papers. The bill was to set aside the annuity, and not to touch the release; and the grant was set aside on the general principle of public utility, as well as on the particular circumstances of the case ; and all the reasoning in the case was applied exclusively to that part of the transaction. In the other case, a voluntary conveyance by the ward to her guardian, obtained in three months after she came of age, was not permitted to stand; and the almost invincible jealousy of the Court was directed against such acts of profit and gain, which might be procured by an undue but secret influence, that would baffle all inquiry. On the other hand, discharges

and settlements are ordinary acts, not within the influence of the doctrine of these cases. Whether they were obtained upon examinations more or less strict, or more or less careless, must depend upon the circumstances of the case, and be left where all other dealings must necessarily be left, in cases free from fraud or imposition, to the judgment and discretion of the parties.

In the case of the *Duke of Hamilton* v. *Lord Mohun*, (1 *P. Wms.* 118.) the husband, by marriage articles, before marriage, covenanted to release the mother and guardian of the young lady from accounting as guardian. Lord *Cowper* relieved against the covenant, but not on the simple ground of the release, but because the covenant would seem to have been extorted by the mother as the condition of her consent to the marriage, and that it came within the principle of a marriage brocage agreement. The Chancellor admitted, that if the release had been given after marriage by the husband, it would have been good, and must be presumed to have been given fairly.

This, then, is the doctrine of the cases. A simple release of a guardian by the ward, when arrived at maturity, is *prima facie* good ; and it is not necessarily to have been presumed to have been obtained by undue influence, like bonds from young heirs, or gifts and conveyances, and lucrative bargains, from wards, or marriage brocage bonds.

For these reasons, I hold the release, standing on the ground that this does by the plea, as good in favour of *Thompson*, *qua* guardian ; and if he be discharged, the release must enure to the discharge of *Taylor*, so far at least as he was *Thompson's* surety. In the character of surety, *Taylor* stands on still higher ground ; and it cannot well be denied, that a release by a ward of his principal, without the knowledge or consent of the surety, and acquiescing in that release for twenty months, and not setting up any pretence of fraud, or undue means in procuring it, will be a complete exoneration of the surety. He had

*1822.*

KIRBY
v.
TAYLOR.

A simple release of a guardian by the ward, when arrived at full age, is *prima facie* good.

A release by a ward of her principal, without the knowledge or consent of the surety, exonerates the surety.

a perfect right to regard the discharge as valid ; and it deprived him, in the mean time, of the opportunity of obtaining indemnity, by rendering it unnecessary for him to take any steps for that purpose ; for how could he require *Thompson*, the guardian, to account, when the only person to whom he was accountable, had voluntarily released him ? It is a little hazardous to cite the observations of the Master of the Rolls, in the case of *Law* v. *The East India Company*, (4 *Vesey*, 824.) since he appears, by his reservations and exceptions in different parts of his opinion, to leave his doctrine without any sanction. But he observed, in one place, that nothing was more clear, than whether what was done was with the consent and by the orders of the company or not, but ignorantly by their officers, it was, as to the surety, a complete discharge ; and Mr. *Vesey*, the reporter, by his marginal note, assumed that to be the doctrine of the case.

(2) But the greater difficulty in this case is to settle precisely the extent of the operation of the release.

In the bond given to the Surrogate, *Taylor* was surety for the three guardians, *Turner*, *Dunlap*, and *Thompson*, and they were all bound jointly and severally in the bond to her, taken by the Surrogate. The rule of law is, that if two persons be bound jointly and severally in an obligation, and the obligee releases one of them, both are discharged, and may plead the release in bar, for every man's deed shall be taken most strongly against himself. (*Litt.* § 376. *Co. Litt.* ibid. 232 a. *Butler's note*, ibid. 144. 2 *Roll. Abr.* 412. G. pl. 4, 5. *Clayton* v. *Kynalston*, 2 *Salk.* 573.) But if two persons be bound jointly and severally in a bond, and the obligee, instead of discharging one of them by a technical release, covenants with one of the obligors not to sue him, this is a covenant only, and the obligee may still sue the other. If there be only one obligor, such a covenant may be pleaded *qua* a release, to avoid circuity of action ; for if it operated only as a covenant, it would produce two actions. (*Lacy* v. *Kynaston*,

1 *Lord Raym.* 690.    12 *Mod.* 551.    2 *Salk.* 575.) The
case of *Dean* v. *Newhall*, in the K. B. (8 *Term Rep.* 168.)
went upon the distinction in the case of *Lacy* v. *Kynaston*,
between a covenant not to sue a sole obligor, and not to
sue one of several obligors.   A covenant not to sue one
alone, may be pleaded by way of release, to avoid circuity
of action, as in *Hodges* v. *Smith*, (*Cro. Eliz.* 623.)   But a
covenant not to sue one of two or more obligors, shall not
be taken to be a release, (for then a release to one would
be a bar to all,) but it shall be taken to be a covenant only;
and a covenant is not a release in its nature, but only by con-
struction, to avoid circuity of action; and the party has still
his remedy at law against the other obligor.   The suit in the
case in 8 *Term Rep.* was against a co-obligor who was a
*surety;* and the Court held, on the strength of that distinc-
tion, that the plaintiff was entitled to recover, notwithstand-
ing he had covenanted not to prosecute the other obligor,
who was the *principal;* and that if he did, the covenant
should be a sufficient release and discharge at law, and in
equity.   Lord *Kenyon* said, that if the defendant had suc-
ceeded at law, a Court of equity would have given the
plaintiff full relief.

   We cannot limit the operation of the discharge in this
case upon the distinction between a release and a covenant,
for the instrument is clearly a release; and Lord *Hard-
wicke* observed, in *Bowen* v. *Swadlin*, (1 *Atk.* 294.) that
there was no doubt, that a release to one obligor is a re-
lease, in equity, to both, as well as in law.   It was upon
this ground, that I considered, upon the first hearing of
this cause, the plea to be a full and complete discharge of
*Taylor*, the surety, who pleaded the release.   But equity will
not give a release an operation beyond the intention of the
parties, and the justice of the case; and I apprehend it
will be found that Lord *Hardwicke's dictum* was not entire-
ly accurate.   He has controlled it by his own more extend-
ed observations in other cases; and though I cannot say,

1822.

KIRBY
v.
TAYLOR.

A release is construed, in equity, according to the intention of the parties.

that I concur in the *dictum* of Lord *Kenyon,* which has been mentioned, or even in the decision of the K. B., in the application of their doctrine to the case of a surety, for if the creditor covenants not to sue the principal, the surety would seem to be deprived of the benefit of substitution, yet I certainly approve of the principle of equity, that releases are to be construed according to the intention of the parties.

Lord *Hardwicke* said, in the case of *Cole* v. *Gibson,* (1 *Ves.* 503.) that it was common in equity to restrain a general release, to what was under consideration at the time of giving it. And, again, in *Ramsden* v. *Hylton,* (2 *Ves.* 304.) he observed, that if a release be given on a particular consideration recited, notwithstanding that the release concludes with general words, yet the law, in order to prevent such surprise, will construe it to relate to the particular matter recited, which was under the contemplation of the parties, and intended to be released.

As, where a joint and several bond was executed by three guardians, and by *T.,* as their surety, and the ward, on arriving at age, released one of the guardians, but expressly reserving her rights as to the others, the release was held to operate only as to the one named in it, and, as to *T.,* so far only as he was surety for him, but not as to the other two.

The doctrine on this subject would seem to be, that a release is to be construed according to the intent and object of it, and that intent will control and limit its operation. This is a general principle of construction in respect to these obligations *in solido,* as they are known in the civil law, in which each obligor is bound for the whole. *Singuli in solidum tenentur.* The release of one debtor, *in solido,* according to *Pothier,* (*Traité des Ob. No.* 275. 277, 278.) is not a discharge of all of them, if it appears to have been the intention to discharge one of them only from his personal responsibility, and to continue the obligation as to the co-obligors.

The case of *Knight* v. *Cole,* executor of *L.,* (cited in *Hern* v. *Hanson,* 1 *Lev.* 101.) was decided in K. B. 1 *W. & M.,* and it was held, that a release " of all demands, for any matter whatsoever," was to be restrained to the occasion of giving it, which was the payment of a legacy of £5, and it did not apply to an existing judgment.

If we construe the release, in the present case, not by the rule of the common law, but by the clear and manifest intent of the parties, and the occasion of giving it, we must confine the operation of it to *Thompson*, the guardian, and to *Taylor*, so far only as he was surety for *Thompson*. The plaintiff, who gave the release, reserved expressly her rights and claims against *Turner*, the acting guardian, and of course against the other parties to the bond, so far as they were bound for him.

It was, probably, not the intention of the bond, that *Thompson* should, himself, be considered as a surety for his co-guardians. *Taylor* was, evidently, a surety for all three, but each guardian was intended to be bound for his own acts only. If it were not so, yet when the plaintiff, *Maria*, released *Thompson*, she intended to give him a full and entire discharge, as broadly as the words of the release would bear. He is released " of and from all claims and demands whatsoever, which she hath, or can, in any wise, claim against him, from the beginning of the world." It would, therefore, be restricting the release, not only contrary to the words, and to the legal operation of it, but contrary to the intention of the party making it, if *Thompson* was still to be deemed holden, and *Taylor*, consequently, on his account, for the acts of the co-guardians. I am induced to conclude, that *Thompson* was entirely discharged, and that *Taylor* is entirely discharged in respect to his being surety for *Thompson ;* for the discharge of the principal is a discharge of the surety, and *Taylor* only remains bound so far as concerns the other obligors.

The decree, therefore, ought not to have been, that the bill, as to *Taylor*, be dismissed. This is one of the cases in which the plea ought to be ordered to stand for an answer, and it is understood, in such a case, (*Mitf. Tr.* 241, 242. *Cooper's Tr.* 233. *Beames' Elements of Pleas,* 319.) to be merely determined, that the plea contains matter which may be a defence, or part of a defence, but that

1822.

KIRBY
v.
TAYLOR.

1822.

KIRBY
v.
TAYLOR.

it is not a full defence; and this is the view which I have of the plea.  It is a good defence of *Taylor*, as far as he was surety for *Thompson*, but not a good defence as far as he was a surety for *Turner*.

Where a plea is ordered to stand for an answer, it may be considered as a defence in whole or in part, but not as a full defence.

In such case, the plaintiff cannot except to the plea as an answer, without special leave given for that purpose.

I shall, accordingly, order and decree, that the former decree, in this cause, be reversed, and that the plea stand for an answer.  I see no reason to add, *with liberty to except*, because the plea, as far as it covers the bill, is good, and the rule on this subject is, that the plaintiff, in such case, may still except to the residue of the answer; but he cannot except to the plea as an answer, without liberty to except be expressly given, because, when the plea is ordered to stand for an answer, it is intended to be a sufficient answer, as far as it covers the bill.  (*Coke* v. *Wilcocks*, *Moseley*, 73.    *Sellon* v. *Lewen*, 3 *P. Wms.* 239.    *Maitland* v. *Wilson*, 3 *Atk.* 814.)    I shall, also, direct, that each party pay his own costs of the rehearing, inasmuch as it is an error of the Court; and I shall " declare, that the plea, with its answer, is good only so far as it goes to protect *Taylor*, as surety for *Thompson*, against all and every responsibility to which *Thompson* might have been liable, under the bond in the pleadings mentioned, prior to the release."

Decree accordingly.

*Note.*    A motion was, afterwards, made, on the part of the defendant, *Taylor*, for leave to withdraw the plea, without prejudice, and to answer the bill, with liberty to insist on the release in the answer, in like manner as by plea.

*Henry*, for the motion.

*Robinson*, contra.

THE CHANCELLOR denied the motion to withdraw the plea, but granted leave to answer the bill, touching the dis-

covery and relief sought thereby, provided, however, that the defendant was not to insist, in his answer, upon the release, so far as the same had been overruled by way of plea.