PUTNAM COUNTY (BURLINGTON & S. W. R. CO. v.). See Case No. 2,169.

PUTNAM COUNTY (NUGENT v.). See Case No. 10,377.

PUTNEY v. The CELESTINE. See Case No. 2,541.

PUTTMAN (BLANCHARD v.). See Case No. 1,514.

## Case No. 11,487.

### PYE et al. v. JENKINS et al.

[4 Cranch, C. C. 541.] [1]

Circuit Court, District of Columbia. May Term, 1835.

UNDUE INFLUENCE — CONVEYANCE BY DAUGHTER TO FATHER—REVERSION DEPENDENT UPON FATHER'S LIFE ESTATE.

Bill in equity to set aside a deed from a young daughter to her father, of all her estate, of which he had a life estate as tenant by the curtesy. *Held*, that the deed should be set aside in equity, both on the ground of the relation of the parties, and the conveyance being of a reversion, to the party who had the life estate, and without valuable consideration.

The complainants [Sally Maria Pye and Edward Arell Pye], infants, by their father and next friend, James B. Pye, alleged: That a share of the real estate of Richard Arell, in the county of Alexandria, D. C., and in Virginia, descended to their mother Eleanor, the daughter of George Jenkins, subject to his life estate as tenant by the curtesy, she being then an infant —— years old. That she continued to reside with her father until her marriage with James B. Pye, in ——, by whom she had the complainants; and in ——, died leaving the complainants her heirs at law. That she was never informed of the extent of the property to which she became entitled by the death of her mother, from whom the property descended to her, and had no means of acquiring information on the subject. That very soon after she attained the age of twenty-one, while she still remained under her father's roof, and remaining ignorant of the extent and value of her rights, the said George Jenkins, availing himself of his parental authority, and of the habit of implicit obedience and submission on the part of his child, procured from her a conveyance of all her interest in the estate of the said Richard Arell, her grandfather, dated the 15th of March, 1813, a copy of which is exhibited. It recites that "whereas Richard Arell, late of the town of Alexandria, hath departed this life intestate, leaving a considerable real estate, consisting of lots, lands, and ground-rents, in and about the town of Alexandria, and in the state of Virginia; and whereas the said Eleanor A. Jenkins, in right of her mother, Mary Jenkins, now deceased, became entitled to a share or dividend of the real estate of the said Richard Arell, deceased, subject, however, to the life estate of

[1] [Reported by Hon. William Cranch, Chief Judge.]

the said George Jenkins, her father, and the said Eleanor Jenkins is desirous of conveying her reversionary interest in the said real property to the said George Jenkins, her father: Now this indenture witnesseth that the said Eleanor A. Jenkins, for and in consideration of the sum of one dollar, to her in hand paid, the receipt whereof, &c., doth grant, bargain, and sell, alien, release, and confirm to the said George Jenkins and his heirs, all the real estate and ground-rents, of every description whatsoever, which the said E. A. Jenkins became entitled to, in right of her mother, Mary Jenkins, deceased, out of the estate of the said Richard Arell, deceased, and the reversion and reversions, remainder, rents, issues, and profits, and all her right, title, and interest in and to the estate of the said Richard Arell, deceased, whether divided or undivided; to have and to hold the same to him and his heirs forever." The bill further states: That the consideration mentioned in the deed was merely nominal, and that it was never pretended that she ever received any valuable consideration for executing the deed. That it transferred all the property and estate of every description to which she had any right, and left her wholly destitute of support, and entirely dependent on her father, who was a man of large fortune. That the deed, under those circumstances, must be deemed to have been made in trust for the said Eleanor and her heirs. That the deed, having been made wholly without consideration, operates only as a resulting trust in favor of the said Eleanor and her heirs. That, if it was not intended as a trust, it was obtained by undue influence of the father, and is therefore void in equity. That he sold and conveyed part of the property, and died in 1831, having left no valid will of his real estate. That he left two children by another wife, to wit, the defendants, John J. Jenkins, and Mary, now wife of Robert Morrow, who, with the complainants, are his heirs at law. That John obtained administration of the estate of his father; and, with his sister, claims an interest in the real estate conveyed by the said Eleanor to her father, and that John has received the rents and profits. The complainants say that they are not disposed to disturb the title of purchasers if they can receive the purchase-money or an adequate compensation.

The answer of John J. Jenkins admits that George Jenkins married Richard Arell's daughter Mary, who died June 8th, 1796, intestate, during the life of her husband, and leaving an infant daughter, Eleanor, born September 17th, 1790, and who married James B. Pye, in 1815, and died July 19th, 1818, leaving two infant children, the complainants. That Mary's right in her father's estate descended to Eleanor, subject to the tenancy for life of her father by the curtesy. It insists on the validity of the deed from Eleanor to her father, and avers that it was made "freely and voluntarily, and without the smallest constraint or undue influence whatever, and with a full knowledge of the nature and extent of her rights," and with the fixed and avowed purpose of enabling her father so to dispose of and manage the said property as should, in his judgment, turn it to the best account, and best enable him to do equal justice to all his family. It denies that she was brought up in seclusion, as suggested by the bill, and avers that she was educated in the best schools, and had every means of information as to her rights that could be expected or desired. That George Jenkins died on the 8th of April, 1831, leaving a will, and making this defendant sole executor. But the will was not so executed as to transfer real estate; but it directs his Alexandria debts to be paid out of the rents of the Alexandria estate; and they have been so applied. That no account has been kept of the repairs; and that Pye, and his children, the complainants, have received from George in his lifetime several thousand dollars, in bank-stock and otherwise. It relies upon the length of time since the date of the deed, 15th March, 1813, to the commencement of this suit, April 7th, 1832; about nineteen years.

It was agreed by the counsel in cause that the answer of John J. Jenkins should stand for that of Morrow and wife; and it was admitted that at the date of the deed George Jenkins was a man of large fortune, and so continued until his death, and that the deed conveyed all the estate to which Eleanor was in any manner entitled.

Mr. Taylor, for plaintiffs, cited Morse v. Royal, 12 Ves. 370; Wright v. Proud, 13 Ves. 137; Newman v. Payne, 2 Ves. Jr. 200; Watt v. Grove, 2 Schoales & L. 492; Whichcote v. Lawrence, 3 Ves. 741; Hatch v. Hatch, 9 Ves. 292; Purcell v. McNamara, 14 Ves. 91; Revett v. Harvey, 1 Sim. & S. 502; 1 Tam. 421; Hylton v. Hylton, 2 Ves. Sr. 547; Waller v. Armistead, 2 Leigh, 11; Kirby v. Taylor, 6 Johns. Ch. 242.

W. L. Brent, contra, cited 4 Kent, Comm. 305; Lloyd v. Spillet, 2 Atk. 150; 4 Kent, Comm. 462, 465; 2 Cruise, Dig. "Deed," c. 27, § 45; Jackson v. Garnsey, 16 Johns. 189; Underwod v. Hitchcox, 1 Ves. Sr. 279; 2 Har. & G. 102; Chiles v. Coleman, 2 A. K. Marsh. 299; Butler v. Haskell, 4 Desaus. Eq. 688; Hatch v. Hatch, 9 Ves. 297; 2 Eq. Cas. Abr. 282; Cory v. Cory, 1 Ves. Sr. 19; Wycherley v. Wycherley, 2 Eden, 177; 1 Eden, 340, 341.

THRUSTON, Circuit Judge, and MORSELL, Circuit Judge, being absent, the case was submitted, upon the argument of the counsel and the authorities cited, to CRANCH, Chief Judge, to be considered in the vacation, who, on the 9th of July, 1835, filed the following opinion:

The answers having denied all restraint and

undue influence, and having averred that the deed was made with a full knowledge of the nature of the extent of the rights of the grantor, and these averments, being responsive to the allegations of the bill, are evidence for the defendants; and, as there is no contradictory evidence, it is conclusive on that point. The case of the complainants, therefore, rests wholly upon the invalidity of the deed by reason of the relative situation and circumstances of the parties at the time of the transaction. It is the simple case of a deed of gift from a young daughter to a wealthy father, conveying all her property, and leaving herself entirely destitute. Her estate was a reversion expectant upon the death of her father, who was tenant by the curtesy. She was, therefore, not only in a situation to be operated upon by parental influence, but in that of an expectant heir, dealing for a reversion, and parting with it for an adequate consideration.

There are many cases decided upon the principle that the party contracting was not perfectly free to act, and the other party has availed himself of his power or influence; and in such cases it has not been deemed necessary that there should have been actual fraud or imposition; but, from the relative situation of the parties, a court of equity will suppose that the party was not free to act, and will set aside the contract, as not having been made with his full and free assent. Among the relations which a court of equity looks upon with a suspicious eye are those of guardian and ward, parent and child, trustee and cestui que trust, tutor and pupil, attorney and client, master and servant, and the cases of expectant heirs and reversioners. In all these cases the court requires the party seeking to avail himself of the contract to show that it was fairly made, for full and valuable consideration, and with full knowledge, by the party sought to be bound by it, of all the circumstances and of all his rights; and in some of these cases the mere relation of the parties is sufficient to vacate the contract.

In Morse v. Royal, 12 Ves. 371, the lord chancellor said: "The authorities connected with this case are not many, and the principles are perfectly clear. One class of cases is that of contracts that may be avoided, as being contrary to the policy of the law, which are interdicted for the wisest reasons. Of that kind are a deed of gift obtained by an attorney while engaged in the business of the author of the gift; a deed by an heir, when of age, to his guardian; purchases of reversions from young heirs, when of age." "To that class of cases I shall add the case of a trustee selling to himself. Without any consideration of fraud, or looking beyond the relations of the parties, that contract is void." "In all these instances there is no necessity for evidence; the contract is interdicted by the policy of the law." "I have no difficulty in saying I should not have regretted to have found that the rule extended to such a case as this. Finding that there is so much difficulty in supporting a purchase by a trustee from the cestui que trust, that the transaction ought to be guarded with that necessary degree of jealousy running so near the verge, it might better be embraced under the policy of the law."

In Wright v. Proud, 13 Ves. 137, the principle of "the rule of guardian and ward," say the plaintiff's counsel, "has been carried so far that a conveyance to a brother by an orphan living with him as one of his family, though no particular fraud appeared, was set aside upon the ground of the relation enabling him to exert an undue influence." And they cited the case of Griffin v. De Venille, 3 Wood, App. 16, 1 Gwil. Bac. Abr. 109; 3 P. Wms. 131, Mr. Cox's note.

In Osmond v. Fitzroy, 3 P. Wms. 131, the court said: "Young heirs, even when of age, are under the care of a court of equity." In that case a voluntary bond by an heir twenty-seven years old was set aside.

In the case of the Duke of Hamilton v. Lord Mohun, 1 P. Wms. 118, the lord chancellor said that "this was within the common case of equity's relieving an heir against any private agreement with his father, upon the marriage of the heir; as where the father covenants to settle an estate on the marriage, and the heir privately agrees to pay back so much out of it to the father, the heir is under the awe of his parent in such case, and not supposed to act freely, for which reasons courts of equity relieve against such private agreements."

In Hatch v. Hatch, 9 Ves. 292, 297, the lord chancellor said: "If the court does not watch these transactions with a jealousy almost invincible, in a great majority of cases it will lend its assistance to fraud."

In Cray v. Mansfield, 1 Ves. Sr. 381, the master of rolls says: "But there is another proper head of equity for the consideration of this court which will always hold a very strict hand over all deeds, purchases, and conveyances obtained from young gentlemen soon after coming of age, by persons presuming too much on the confidence reposed in them, and drawing them in to execute the deeds."

In Hylton v. Hylton, 2 Ves. Sr. 548, the lord chancellor said: "Where a man acts as guardian, or trustee in the nature of guardian, for an infant, the court is extremely watchful to prevent that person's taking advantage immediately upon his ward or cestui que trust coming of age, and at the time of settling accounts, or delivering up the trust, because an undue advantage may be taken. It would give an opportunity either by flattery or force, by good usage unfairly meant, or by bad usage imposed, to take such advantage; and therefore the

principle of the court is of the same nature with relief in this court on the head of public utility, as in bonds obtained from young heirs, and rewards given to an attorney pending a cause, and marriage brocage bonds. All depends upon public utility, and therefore the court will not suffer it, though perhaps in a particular instance there may not be actual unfairness. Upon that ground I went in the case cited, in which I have added at the end of my note taken at the hearing of the cause: 'To be absolutely set aside, being between a guardian and his ward just come of age, and on reason of public utility.'"

In Waller v. Armistead's Adm'r, 2 Leigh, 14, the deed was by a ward of full age to his guardian. The court of appeals in Virginia said: "So many undue advantages may be taken in such cases, by means of the influence which may in various ways be exercised by the guardian, that the law, on a principle of public policy, vacates all such conveyances without proof of any actual fraud whatever."

In Kirby v. Taylor, 6 Johns. Ch. 249, the ward had given a release to her guardian, six months after she came of age. Chancellor Kent says: "It [the release] is not necessarily to have been presumed to have been obtained by undue influence, like bonds from young heirs, or gifts or conveyances, and lucrative bargains from wards."

In Revett v. Harvey, 1 Sim. & S. 502, the solicitor acted as guardian. The ward gave a release two months after he came of age. The vice chancellor set it aside, saying: "This case must be governed by the principles which apply to a guardian and his ward."

In Butler v. Haskell, 4 Desaus. Eq. 702, the court says: "There seems to be two classes of decided cases on this subject,— one where the relation of the parties is such that no contract can be permitted on any terms if sought to be relieved against, as the case of attorneys dealing with clients, or trustees selling to themselves; the other where the relation of the parties does not interdict all contracts on the subject of the trust; but where, a confidence being reposed, the court looks with a jealous eye at the conduct of the agent, and will set aside the contract if there be any considerable inadequacy of price in the transaction, and more especially if there be any weakness or necessity in the vendor."

In Carpenter v. Heriot, 1 Eden, 342, the lord keeper said: "It appears to me that the bond was obtained by parental influence. I am, therefore, of opinion, that it ought to be cancelled."

In Huguenin v. Baseley, 14 Ves. 273, a deed by a widow to a clergyman and his family, obtained by religious influence and confidence, was set aside. See, also, Norton v. Relly, 2 Eden, 286, where an annuity was set aside, because obtained by spiritual ascendency and religious delusion.

In Gubbins v. Creed, 2 Schoales & L. 217, the lord chancellor said: "In the simple case of a mortgagor giving a lease to the mortgagee there would not, perhaps, be ground sufficient to impeach the lease; but if there be any more, the court will look into the transaction with the greatest possible jealousy; and if it prove to be a contract for a lease in consideration of forbearance, it is a contract for more than the law allows for forbearance, and is then usurious. I do not think that this case comes precisely within that decision; but it is manifest that Creed took advantage of his situation as mortgagee; and, if he did, the court cannot permit him to hold that advantage."

In Evans v. Llewellin, 1 Cox, Ch. 333, 339, 2 Brown, Ch. 150, the deed was set aside as improvidently obtained, for an inadequate consideration, from persons in low circumstances, and unapprised of their right until the time of transaction, though no misrepresentation or actual fraud, whatever, appeared to have been used.

The master of rolls, Sir Lloyd Kenyon (March 5th, 1787), in page 339, etc., said: "The cases of infants dealing with guardians, and of sons with fathers, all proceed upon the same general principle, and establish this: That if the party is in a situation in which he is not a free agent, and is not equal to protecting himself, this court will protect him. I do not know that the court has drawn any line in this case, or said, 'Thus far we go, but no further;' it is sufficient for me to see that the party had not the protection which he ought to have had, and therefore the court will harrow up the agreement. I am of opinion, in this case, the party was not competent to protect himself, and therefore this court is bound to afford him such protection; and therefore these deeds ought to be set aside as being improvidently obtained."

In Jeremy's Equity Jurisdiction (page 399), it is said: "There are many cases in which this court will interfere to prevent improvident persons, or those claiming under them, from the consequences of their acts, where there is no express fraud, nor any peculiar relation between the parties, nor that injury to the interests of third persons which would, separately, invalidate the transaction, but in which there exists such a combination of circumstances, partaking, in a slight degree, of some or all of the grounds of suspicion hitherto noticed, as to induce this court to exert a control, and in respect to which it is held advisable not to give too particular reasons for its determinations."

In Gwynne v. Heaton, 1 Brown, Ch. 9, the lord chancellor (Thurlow) said: "The heir of a family, dealing for an expectancy in that family, shall be distinguished from ordinary cases; and an unconscionable bar-

gain made with him shall not only be looked upon as oppressive in the particular instance, and therefore avoided, but as pernicious in principle, and therefore repressed. This must be taken to be the established principle." "In those cases fraud is not the ground of relief; it is the example and pernicious consequences. It is contended that this case is not within the view. I think no man's case can be more so than an heir expectant of an estate tail, and the father in possession of another estate, so that he stood fully in the situation which has served as an example of unequal dealing, in former times."

In Young v. Peachy, 2 Atk. 258, a conveyance by a daughter to her father, obtained for one purpose, was attempted to be used by the father for another purpose. This was set aside. Lord Chancellor Hardwicke says (in page 258): "In the present case the recovery was suffered for one purpose, and is attempted to be made use for another; and though it had been objected, the allowing the evidence of this sort is against the statute of frauds and perjuries, yet, if that objection should be allowed, the statute would tend to promote frauds, rather than prevent them. For these reasons, therefore, I declare, though there had been no other circumstances in the case, I should have been of the opinion that the recovery ought to have been set aside; but the case is greatly strengthened when it comes to be considered that this was a recovery obtained by a father from his child; and, when that is the case, it affords another strong circumstance in order to relieve the plaintiffs. In the case of Glisson v. Ogdon, before Lord Chancellor King, that circumstance was strongly relied upon; but his lordship refused to give relief, for he said it was a fair bargain between a father and his child, and he would not weigh in golden scales whether the consideration was exactly even or not. In March, 1731, there was an appeal to the house of lords from that decree. Upon the appeal the lords laid great weight upon that circumstance, that the conveyance was obtained by the father from his daughter in distress, and the decree of Lord Chancellor King was reversed."

From these authorities it seems to be perfectly clear that the deed from Eleanor Jenkins to her father, George Jenkins, ought to be set aside, both on the ground of the relation of the parties, and the conveyance being of a reversion to the party who had the life estate, for an inadequate, or rather for no valuable consideration. The interlocutory decree, suggested by the plaintiff's counsel, may be drawn up.

The March term was then adjourned to the 27th of May; the Alexandria May term being held in the intermediate time.

A final decree, in favor of the complainants, was rendered in 1837, which was reversed, upon appeal to the supreme court, in 1838. 12 Pet. [37 U. S.] 241.