CASE 56—ACTION BY A. S. FERGUSON V. SECOND NATIONAL BANK OF ASHLAND TO RECOVER FOR NOTARIAL FEES, PLAINTIFF BEING CASHIER OF SAID BANK.—JAN. 13.

# Second Nat. Bank of Ashland v. Ferguson.

APPEAL FROM BOYD CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. REVERSED.

NOTARIES—FEES—CONTRACT FOR SERVICES—INCLUSION OF FEES—LEGALITY—ESTOPPEL.

Held: 1. A bank clerk by the contract of hiring was to receive fifty dollars per month for his services, including notarial fees, and after receiving such compensation he sued for his notarial fees, which did not amount to fifty dollars per month, on the ground that a contract by a public officer to accept less than his legal fees is illegal. HELD, that the contract having been understood, and the lump sum accepted being greater than the fees, there was no contravention of public policy.

2. Plaintiff having received and retained the fifty dollars per month in satisfaction of his services, and having remained in the employment, he was estopped from demanding further compensation.

HAGER & STEWART, FOR APPELLANT.

### POINTS DISCUSSED AND AUTHORITIES.

The verdict is flagrantly against the evidence and new trial should be granted because the jury did not find for appellant under instruction No. 2.

No one can use a void contract as a means of getting better terms than he could have claimed under it.

One who makes a contract vicious and invalid as against public policy in respcet of his legal fees for services to be rendered, can not, after rendition of the services disregard the contract and recover reasonable value of the services, nor the value fixed by law.    Williemin against Bateson, 63 Michigan 309; Myers v. Meinrath, 101 Mass., 366 (3 Am. Rep., 368); Anderson v. Meredith's Administrator, 82 Ky., 565.

It is the duty of the court at once to arrest trial of the cáse and dismiss the plaintiff from court whenever it is disclosed in any manner, whether with or without pleadings, that his cause of action rests upon, or is connected with, a contract void as against public policy.    Patterson v. Hamilton, 19 Ky. Law Rep., 825; Oscanyan v. Winchester Repeating Arms Co., 103 U. S. 274.

PROCTOR K. MALIN, FOR APPELLEE.

### QUESTIONS DISCUSSED AND AUTHORITIES CITED.

1. The verdict is supported by the evidence and the jury were justified in finding for appellee under instruction No 1.

2. Instructions offered by appellant were properly refused by the court.

3. The assignment by a public officer of his unearned fees is void, and an answer to a petition for the recovery of such fees pleading such assignment presents no defense.    Holt v. Thurman, &c., 23 Ky. Law Rep., 82; Meachem on Public Officers, sec. 47; State of Nevada, ex rel. v. Summerfield, &c., 18 L. R. A., 313; People of the State of New York v. William F. Rathbone, 145, N. Y., 434.

4. Unless the party requires aid from an illegal contract to establish his case, such illegal contract can not be relied upon as a bar to a recovery.    Ohio National Bank of Washington v. Hopkins, (8 App. D. of C., 146); Phelan v. Clark, 19 Conn., 421; Insurance Company v. Hull, 51 Ohio State, 470; Armstrong v. American Exchange, 133 U. S., 469.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

For several years previous to July 18, 1893, appellee was individual bookkeeper for appellant at a salary of $50 a month. He was also a notary public, and received the fees for making protests. On that day the bank reduced the salary of all its officers, and by a resolution of the directors it was provided that "the salary of the individual bookkeeper be fixed at the rate of $600 per annum, and he shall make all protests free of charge." Immediately after the adjournment of the board, he was notified of its action, and went to see them. All of the directors but two had left. These told him, in substance, that this was the best they could do, and that, if he did not want the place at that, they could get some one else for less. He then left. and the next morning early came down to the bank and told the president that he had had a talk with his father, who was also one of the directors, and had a proposition to make to him; that he would come back and work for the salary of $50 a month, provided the bank would give him $10 a month for notarial fees. The president said: "You know I can't do anything of that kind. You will have to see the directors about it." Appellant replied: "Whatever you say to the directors goes, and, if you say that you will see that I get this, I will go to work." The president said: "That is all right. You were not asking too much, anyhow." At the next meeting of the directors, appellee asked the president if he had brought the matter before them, and he said, "No," he had forgotten it. Nothing more was said about the matter, and appellee drew his salary of $50 monthly, making no charge for notarial fees, and no demand of the money. He left the service of the bank in February, 1896, and in September, 1898, filed this suit against it to recover $754.50, the

amount of his notarial fees between July 18, 1893, and the time he left the bank. In the circuit court he recovered judgment, and the bank appeals.

The above are the facts as shown by appellee's own testimony. There is little controversy in the proof, the only difference being as to the conversation between him and the president the next morning, the president stating that he agreed simply to refer the matter to the directors; but we do not regard this as material. Appellee knew very well that the board of directors were the proper authorities to fix the salaries of the officers of the bank. He knew that they had fixed his salary at $50 a month, including notarial fees, and he also knew that the president of the bank had no authority to make any contract with him not warranted by the action of the board of directors. He does not, therefore, sue for the $10 a month, or base any claim upon what took place between him and the president of the bank. His counsel rests his right to recover on the ground that a contract by a public officer to receive less for his official services than the charges authorized by law, or to discharge his duties gratuitously, is contrary to public policy and void, and therefore appellee is entitled to recover the legal fees for his services as notary public. When appellee remained in the bank after the board of directors had by resolution fixed his salary, and received month after month from it the amount of salary thus fixed by the board, without demanding more or asserting any claim for other compensation for his services, he must be conclusively held to have rendered the services on the terms proposed by the board, and to have accepted those terms. When at the end of each month the $50 was paid to him, it was paid not only in satisfaction of his services as bookkeeper, but also in

satisfaction of his services as notary public. His fees as notary public were then earned, and he knew the amount of them. The agreement beforehand to commute his fees as notary public, or to assign them to the bank, was not binding on him. Bank v. Hopkins, 8 App. D. C., 146. But when, after the services had been rendered and the fees earned, he accepted a gross sum in satisfaction of his fees, and as compensation for his work as book-keeper, a different question is presented. For he had a right to assign to the bank or to anybody else his fees for services already rendered. Field v. Chipley, 79 Ky., 260, 42 Am. Rep., 215. The case of Holt v. Thurman (111 Ky., 84) (23 R., 92) 63 S. W., 280, was the case of the assign-ment of unearned fees or salary. If at the end of any month he had refused to accept the $50, and had demanded his fees, on the ground that his legal fees as notary pub-lic were more than $50, the contract referred to would have been no bar to a recovery of these fees, for the rea-son that a contract in advance by a public officer to take less than the legal fees for his services can not be enforced. 15 Am. & Eng. Ency. Law (2d Ed.), 965. But when he ac-cepted the $50 each month in full of his services as book-keeper, and also of his fees as notary, he can no more maintain an action for his fees as notary than for his ser-vices as bookkeeper, for one has been paid just as truly as the other. The $50 a month was not paid him alone for his services as bookkeeper. It was paid him in satisfac-tion not only of these services, but also of his services as notary public, and was accepted by him as such, for he made no demand of anything more until after he left the service of the bank; and before July 18, 1893, his notarial fees were paid along as the work was done, and when, after this, they were not paid in this way, he was bound

to know that the $50 was paid in satisfaction of these fees, as well as his salary as bookkeeper. The court can not inquire what part of the $50 was paid on one account or the other, for in this we have nothing to guide us. We can not say the $50 was paid for appellee's services as bookkeeper, for that is not the fact. The acceptance of a lumping sum, covering both his official fees and his personal services, contravenes no public policy, when the sum so accepted is greater than the fees, and the arrangement is fair and fully understood. The claim for fees, having been satisfied by the monthly payments of $50, can not now be sued upon. He who accepts monthly for his services the money of another, knowing that it is paid in satisfaction thereof, will be estopped, after thus remaining in the employment, to demand greater pay for his services. City of Lexington v. Rennick, 105 Ky., 779 (20 R., 1609) (20 R., 1924) 49 S. W., 787, 50 S. W., 1106. The facts of this case illustrate the justice of this rule, for the bank, acting on the idea that it did not have to pay these notarial fees, failed to collect something like three-fourths of them from its customers; and, if appellee is now allowed to recover, a loss will be thrown upon it, without remedy. On the undisputed facts shown by the evidence, the court should have peremptorily instructed the jury to find for the defendant.

Judgment reversed, and cause remanded for further proceedings consistent with this opinion.

Petition for rehearing by appellee overruled.