CHICAGO—FIRST DISTRICT—OCTOBER, 1912.    53

Mussing v. Corn Exchange National Bk. of Chicago, 173 Ill. App. 53.

## Martin Mussing, Appellant, v. The Corn Exchange National Bank of Chicago, Appellee.

### Gen. No. 16,821.

1. NOTARIES—*protest fees*. Where a notary employed as a clerk by a bank agrees as part of his contract of employment that fees in protesting the bank's commercial paper shall be retained by the bank, accepts his salary for five years without claiming fees that he knew had been collected and signs the semi-monthly pay-roll sheet which contains a statement that all claims are released, this course of conduct and the signing of the release, without reference to and apart from the original contract, operate as an assignment of any fees then collected which is effectual, as a bar to a claim for fees.

2. NOTARIES—*fees*. Where a notary public, an employe of a bank, is given the alternative of accepting another position at a reduced salary, or of taking charge of the notarial work at his former salary waiving the right to protest fees and agrees that the protest fees shall be retained by the bank, even if the contract to assign the fees is to be regarded as void as against public policy, the employe was a free agent dealing on equal terms with the bank, both parties are *in pari delicto* and the employe cannot recover the notarial fees collected and retained by the bank.

Appeal from the Circuit Court of Cook county; the Hon. LOCK-WOOD HONORE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed October 3, 1912.

FRANCIS W. WALKER, JAMES I. ENNIS, ALBERT G. WELCH and KENNER S. BOREMAN, for appellant.

JUDAH, WILLARD, WOLF & REICHMANN, for appellee.

MR. JUSTICE McSURELY delivered the opinion of the court.

This was an action of *assumpsit* brought by Martin Mussing, plaintiff, to recover from the Corn Exchange National Bank of Chicago, defendant, certain fees collected by the defendant for services rendered

by the plaintiff as a notary public to various customers and correspondents of defendant, which fees were retained by it and appropriated to its own use.

The period covered by this claim is between May 15, 1901, and May 1, 1906, and it is stipulated that the amount of the fees so collected is $13,132.24. The trial court permitted the plaintiff to recover the amount of fees collected from April 13, 1906, to May 1, 1906, amounting to $185.84, and judgment against defendant for this amount was entered. Plaintiff has appealed from this judgment, and is in this court claiming the whole amount of such fees for the entire period above mentioned.

The declaration consists of the common counts in *assumpsit* and a special count, in which latter count it is alleged that the defendant was a banker and engaged in the banking business in Chicago, and that it received from divers customers and correspondents sundry checks, notes, etc., for presentation and collection; that it was its duty to make such presentation or demand, and in case of non-payment or non-acceptance to cause the same to be noted for protest; that the plaintiff was a duly commissioned and qualified notary public, and that during said period the defendant delivered to plaintiff, as notary public, 5,746 items of such commercial paper, and that plaintiff, as a notary, presented such paper and noted the same for protest and performed the duties incumbent upon him as such notary public, and delivered the paper to the defendant, together with the usual certificate of protest, and requested the defendant to collect from its correspondents the fees due to the plaintiff as such notary public; that said defendant, as agent of the plaintiff, collected the fees so due, and has refused to account for and to pay the same over to the plaintiff.

To this declaration the defendant filed the plea of the general issue and a number of special pleas. The second additional plea alleges that the defendant was a national bank engaged in the banking business in

the city of Chicago, and that it received from numerous persons and correspondents, as their agent, various and sundry checks, notes and other commercial paper for presentation and collection by the defendant to and from the parties obligated thereon; that it was its duty to present the same for payment at such times and places as required by law, and in case of non-payment or non-acceptance thereof to cause the same to be duly noted for protest and protested; that during the period aforesaid plaintiff was a duly commissioned notary public, and on the first day of October, 1900, the plaintiff and the defendant entered into a certain contract of employment, by virtue of which the plaintiff herein undertook and agreed to perform certain proper and legal services as a clerk for the defendant, and as a part of such services and in connection therewith to attend to the protest of, and to protest, such commercial paper as should during the course of his said employment come into the hands of the defendant in the conduct of its said banking business for collection and protest, and to do and perform the requisite notarial services incident to the protest thereof, and in consideration of all of such services so to be performed by the plaintiff, defendant then and there agreed to pay the plaintiff the total and entire sum of $1,500 per year. And it was further then and there agreed in and as a part of said contract of employment, and in consideration of the mutual covenants and agreements aforesaid, and the mutual performance of the same, that all notarial fees charged and collected in connection with such protests of such commercial paper should, as and when paid and collected, pass to, be retained by and become the property of the defendant; that from and after the entering into of said contract of employment said plaintiff began the performance of said services, and continued so to do during all the time in said declaration mentioned, and during all of said time all of the notarial fees aforesaid, collected in connection with the protest of said com-

56 APPELLATE COURTS OF ILLINOIS.

Mussing v. Corn Exchange National Bk. of Chicago, 173 Ill. App. 53.

mercial paper, were paid to and received and retained by the defendant, and all without any demand or claim therefor, or any part thereof, at any time, made by the plaintiff; that from and after the date of plaintiff's said employment, defendant paid to plaintiff the stipulated salary of $1,500 per year, all of which plaintiff has retained.

The fourth additional plea was of an accord and satisfaction by reason of the acceptance by plaintiff from the defendant from time to time of certain sums of money on the basis of $1,500 per year in full satisfaction, etc. The sixth additional plea is to the effect that the plaintiff released and discharged the defendant from the said claims, demands, etc.; and the seventh additional plea is to the effect that the plaintiff by an instrument in writing released and discharged the defendant, etc.

There is little, if any, disagreement as to the facts. The plaintiff seems to have proved the facts alleged in his special count, and the defendant has proved the contract of employment and other facts alleged in its additional plea. This contract of employment is evidenced by the testimony of Mr. Orr, one of the vice-presidents of defendant's bank, which is as follows:

"My best judgment is that it was in September, 1900. On sending for Mr. Mussing I informed him that the bank would not be able to continue him on the salary he had been receiving. That there was no position in the bank of sufficient importance that he could fill that would warrant us in paying that salary. I told him that it was either a case of being willing to accept a bookkeeper's position at the ordinary bookkeeper's salary, or another arrangement that I had in mind in regard to the notarial fees, or the notary work, rather, if he chose to do it under that arrangement. The arrangement that I suggested to him was that we would continue to pay him the $1,500 salary that he had been getting if he would waive his notarial fees, doing all the notarial work, which was otherwise to be distributed with the different clerks in the office. I also told

him that if he had any spare time it would be subject to the use of the bank within the regular hours, and that only in the event of his having any extra time would he be called upon to act in any other capacity in case he did the notarial work. I also informed him that the reason we could not employ him at any post of importance was not inability to do the character of work, but it was his unfortunate disposition that would not permit of our letting him deal with the public. He simply lost control of himself upon the slightest provocation, and it was embarrassing to the institution. I told him if he chose to do this notary work I had thought of he must be exceedingly careful on account of his disposition, and assure us that there would be no complaint on this score, and that it would be but a trial, or at least if he did not prove satisfactory it would be but a trial. I told him that the notary fees would go into the bank, he waiving all claims to such fees.

"He said he appreciated very much the consideration that was given him, and he would see to it that there was no further complaint, although he contended that his disposition was still good and always had been. He said he would accept the proposition gladly, and thanked the bank for giving it to him. In the conversation I said that we could not continue him any longer in the service unless he chose to accept such position as we might assign him on the ordinary books at bookkeeper's salary, or unless this proposition in regard to the notary work was agreeable to him."

When plaintiff took charge of the notarial work a notary's account was opened by him upon the books of the bank. In this account were entered the charges for all notarial fees charged against the correspondents of the defendant bank, resulting from the notarial work done by plaintiff, and when they were collected a corresponding credit entry was made in the same account. On the books of the bank, as disclosed by this account, these fees were treated as and constituted a part of the assets of the bank, and when collected became a part of the funds of the bank, and

were mingled therewith. From time to time they were distributed as part of the earnings of the bank in the way of dividends, all of which the plaintiff knew.

Plaintiff was paid his salary on the basis of $1,500 a year, in semi-monthly installments of $62.50. On each occasion when paid his salary he signed a certain payroll sheet. Across the top of each payroll sheet were printed the following words:

"The undersigned individually acknowledge having received from the Corn Exchange National Bank of Chicago the sums due them, respectively, on the date hereof, in full payment and satisfaction for all services rendered by them for the said bank to the date hereof, inclusive. In consideration whereof, each for himself, does hereby release and discharge the said bank from all claims and demands due him for any and all services by or for him done in any capacity up to this date."

The last payroll sheet signed by him was dated April 13, 1906. He refused to sign the payroll sheet of April 30, 1906.

The first controverted point is as to the validity of the agreement by which the bank was to retain the notarial fees and to pay the plaintiff a salary for all services. A very large amount of labor and learning has been expended by counsel for plaintiff in support of their contention that an assignment of fees or salary to be earned in the future by a public officer is contrary to public policy and void. Opposing counsel contend that this rule has no application to a mere ministerial officer, such as a notary public. In view of the conclusion we have reached, we do not deem it necessary to express any opinion on either of these points.

Whatever may be the rule as to the validity of the contract in question in the first instance, we are of the opinion that there is nothing invalid in an agreement to assign and transfer such fees after they have been earned and collected. For more than five years plaint-

Mussing v. Corn Exchange National Bk. of Chicago, 173 Ill. App. 53.

iff accepted his salary in semi-monthly installments, without demanding more or asserting any claim for other compensation, knowing all the while that the bank had then in its possession moneys which represented fees earned through his official acts as notary public. This course of conduct, together with the signing of the receipt above described, must be held to operate as an assignment of any fees then collected, and this follows without reference to and apart from the original contract. The original contract may be material evidence tending to explain the subsequent conduct of the parties, but it imparts no obligation of its own, if any there may be, to the binding effect arising from the subsequent acts of the parties. There appears scarcely any reasonable ground for questioning the fact that plaintiff assigned and transferred all his interest in any fees already earned and collected by the bank. It follows therefore that he has created an effectual bar to any further claim against the defendant. If any precedent were needed, the cases of Hobbs v. City of Yonkers, 32 Hun (N. Y.) 454, affirmed in 102 N. Y. 13, and Second National Bank v. Ferguson, 114 Ky. 516, would be applicable. The opinions in these cases are long, and it must suffice to say that the facts appearing in them are practically the same as in the case before us, and the reasoning and decision in each case meet with our approval, as being based upon sound principles.

Another consideration of weight with this court is, conceding the original contract to have been invalid, that where both parties are in equal fault, courts will not grant any relief; or, as the Latin maxim, translated, concludes: "The position of the defendant is better." It is claimed, however, by the plaintiff that the parties herein were not upon equal terms when the contract was made, or during its performance, and that the rule should be observed that where the parties are not *in pari delicto,* or perhaps when both parties

are *in delicto,* the court will grant relief to the party whose degrees of wrong is the less. As stated by Story, the rule is: "In cases where both parties are *in delicto,* concurring in an illegal act, it does not always follow that they stand *in pari delicto*; for there may be, and often are, very different degrees in their guilt. One party may act under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition or age; so that his guilt may be far less in degree than that of his associate in the offense." Story's Eq. Jur., Sec. 300.

We agree with the rule as stated, but do not think that it applies to the facts in this case. At the time of the contract of employment plaintiff was entirely at liberty to make the agreement or to refrain from making it. He was a free agent. Presumably he chose to enter into this agreement from motives of advantage and profit to himself. From Mr. Orr's testimony it appears that plaintiff was given his option as between this arrangement and another line of work in the bank, and plaintiff preferred the agreement which he now repudiates. The same conditions prevailed during the years of the performance of the contract; if dissatisfied, he could at any time repudiate it, as he did in May, 1906. None of the elements mentioned by Story, or any such like circumstances, are present here.

In Ohio National Bank v. Hopkins, 8 Appeal D. C. 146, and other cases cited by plaintiff's counsel, the facts involved are sufficiently dissimilar from those before us to justify us in declining to consider them as "on all fours."

The trial court allowed plaintiff to recover the amount of fees earned and collected from April 13, 1906, the last date when plaintiff signed the receipt for his salary, to the termination of his employment, which was $185.84, and judgment therefor was entered. In our opinion the trial court was right in so doing, and the judgment will be affirmed.

*Affirmed.*