## Wilson v. Morrison

(Decided February 19, 1913.)

### Appeal from Bourbon Circuit Court.

Contracts—Estoppel—Peremptory Instruction.—Where plaintiff claims a contract with defendant whereby he was to receive $75 a month and 30 cents an hour for extra time over 10 hours a day, and sues for the difference between the amount due on that basis and the amount actually received, and admits that about a week after the alleged contract was made, he agreed to an arrangement whereby he was to receive 30 cents an hour for all time, both regular and

extra, and kept his own time and received payment on this basis for a period of 12 years without protest or demand, his conduct precludes a recovery, and the trial court should have directed a verdict in favor of the defendant.

C. A. M'MILLAN and TALBOTT & WHITLEY, for appellant.

DENIS DUNDON, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Claiming that under his contract of employment with defendant, J. Simms Wilson, he was to receive $75 per month and 30 cents per hour for all extra time in excess of 10 hours a day, and that there was due him under this contract the sum of $12,154.75, whereas he had been paid only the sum of $6,137.50, plaintiff, J. H. Morrison, brought this action against defendant to recover the difference, amounting to $6,017.25. Defendant denied that he employed plaintiff by the year and agreed to pay him, $75 per month and 30 cents an hour for extra time, and pleaded that he employed plaintiff under an agreement to pay him 30 cents an hour for all time, whether regular or extra, and that he paid plaintiff all that was due under said contract of employment. A trial before a jury resulted in a verdict and judgment for plaintiff in the sum of $550. Defendant appeals.

It appears from the evidence that Wilson was conducting a bluegrass seed cleaning establishment in Bourbon county, Kentucky. Morrison was an engineer and machinist, and Wilson employed him to assist in the operation of the plant. Plaintiff began work for defendant on April 12, 1898, and continued in his employment until July, 1910. Plaintiff says that he had been working for Wilson in the year 1897. Some dispute arose as to his compensation. Plaintiff claimed that there was due him $150, while defendant claimed that the amount due was much less. The parties finally effected a compromise. Plaintiff says that on April 12, 1898, he and defendant entered into a contract by which defendant agreed to pay him $75 per month for his regular time of 10 hours per day, and 30 cents per hour for all extra time. Plaintiff produced certain books in evidence wherein he kept his time as well as the time of the other employes. In these books he not only kept his extra time but his regular time, and he admits that he was paid for all the time which his books show

that he worked. While stating most emphatically that he was working under a contract of $75 per month and 30 cents an hour for extra time, plaintiff, on cross examination, made the following statement:

"Q. Mr. Morrison, all the time from 1898 up to the time you quit were you working for Mr. Wilson under that same contract? A. Yes, sir. At least I supposed I was. Q. Isn't it a fact, Mr. Morrison, that part of the time he gave you $2.00 a night for every night you worked? A. Yes, sir. Q. And not thirty cents an hour for extra time? A. Well now Mr. Wilson gave me that, but I couldn't do better myself. Q. You couldn't? A. I couldn't do any better. I had to take what he gave me. Q. What do I understand about you couldn't do better yourself? A. Why, I had to take what he gave me. He said he thought that was all it was worth. Q. Why did you figure it up twelve hours at thirty cents an hour if you were drawing $75.00 a month? A. Now, I can explain that to you and the jury, too. Q. That is exactly what we want you to do. A. After we made the contract in 1898, why, we come to settle up—he come to pay me for one Saturday night, I started to try to have it figured up at the rate of $75.00 a month. And Mr. Wilson says it is so little it don't amount to anything, just let it go at thirty cents an hour. Q. He says it is so little it don't amount to anything, just let it go at thirty cents an hour? A. Yes, sir. Q. And you let it go at thirty cents an hour? A. Yes, sir, that is, extra time and all. Q. And you agreed to it? A. Yes, sir. Q. And you kept it that way? A. Yes, sir. Q. And you collected it that way? A. Yes, sir. Q. When was it you agreed to do that? A. I think about a week after we made the contract the first time. Q. And you agreed to let it go at thirty cents an hour? A. Yes, sir. It come to $3.00 a day. Q. And you kept your time from the first week you started to work clear on for 12 years, any other hours you worked you charged yourself—charged the amount up to him at thirty cents an hour by the books? A. Yes, sir."

Plaintiff further testified that Mr. Wilson would frequently tell him that he was in bad shape for money, and to get along as well as he could. In this connection plaintiff said:

"Several times I went to him for money and he would tell me 'John, don't draw any more than what you have

to have, I am in bad shape.' He says 'My business is in bad shape.' In fact, I knew that he was in debt when he put this big building up here and other things, and he would tell me to get along with just as little money as I could. He says 'As long as I have got a dollar you will never suffer if I can help it.' "

Defendant testified that the only contract he had with plaintiff was that he was to pay plaintiff 30 cents an hour for all the time that plaintiff worked. Plaintiff would draw his money along at times, and every now and then he and plaintiff would have a full settlement and the settlement was made on the basis of 30 cents an hour. During the whole number of years that plaintiff worked for him he paid plaintiff in the neighborhood of $8,000. On cross-examination, he was asked if he had not stated to Mr. Brent and Mr. Hutchcraft and others that he had plaintiff employed by the year at a thousand dollars a year. Plaintiff denied making the remark.

In rebuttal plaintiff called Messrs. Hutchcraft, Brent, Ray and Bacon. Mr. Hutchcraft stated that in the year 1901 Wilson had said to him that in order to get Morrison away from Spears and Stewart, he had to hire him by the year. After witness' plant was burned defendant stated that he could clean seed for less money than witness, as he had Morrison hired by the year, and had to pay him a thousand dollars a year, and wanted to keep him employed. The evidence of Brent, Ray and Bacon is substantially to the same effect.

Defendant insists that the trial court erred in refusing to direct a verdict in his favor.

In the case of City of Lexington v. Renick, 105 Ky. 779, the general council enacted an odinance providing that from and after May 1, 1895, the members of the police force should receive the following salaries: patrolmen, $75 a month lieutenants, $80 a month; captains, $85 a month. On March 7, 1896, the general council adopted another ordinance fixing the salaries of the members of the police force after April 1, 1896, as follows: patrolmen, $60 a month; lieutenants, $65 a month; captains, $75 a month. Renick and the other policemen were paid and accepted their salaries pursuant to the last named ordinance until May 27, 1897, when they were discharged. They then filed suit to recover of the city the alleged balance due them from April 1, 1896, to May 27, 1897,

on the ground that the city had no right to reduce their compensation, and that they were entitled to full pay, as fixed by the ordinance of April 9, 1895, for the whole time that they had served. It was held that having enjoyed the offices and having accepted the reduced salaries without protest, their own conduct precluded a recovery. In discussing the question on a petition for rehearing, the court used the following language:

"The distinguished counsel also insists that there can be no estoppel in this case, because an estoppel never arises from the acceptance of a part of a debt in payment of the whole. This is not the doctrine on which the opinion rests. Appellees knew at the end of each month that the city thought it was getting their services at the reduced salaries. They also knew that if they refused to serve the city at the reduced price it might exercise its pleasure of discharging them at will. Knowing this they accepted the reduced salary to avoid the risk of losing their places, and the city continued them in its service from month to month upon the supposition that they were willing to serve it for the amount paid. To allow them now to hold the city liable for their original salaries is to allow them to put the city in a worse position, and inflict a loss on it which it might have avoided had they not misled it by their conduct.

"The city cannot be placed in *statu quo,* and appellees, having secured an advantage by the line of conduct which they pursued, cannot now be allowed to change it to the prejudice of the city."

In the more recent case of Second National Bank of Ashland v. Ferguson, 114 Ky., 516, the same doctrine was applied. There the bank employed Ferguson at a salary of $50 a month. He was also a notary public, and received the fees for making protests. On July 18, 1893, Ferguson's salary was fixed at $600 per annum with a further provision that he should make all protests free of charge. Ferguson was notified of the action of the board of directors. Next morning he came to the bank and told the president that he would go back to work for a salary of $50 a month, provided the bank would give him $10 a month for notarial fees. The president said: "You know I can't do anything of that kind. You will have to see the directors about it." Ferguson replied: "Whatever you say with the directors goes, and if you say that you will see that I get this

I will go to work." The president said: "That is all right. You were not asking too much anyhow." At the next meeting of the directors Ferguson asked the president if he had brought the matter before the board, and he said no, he had forgotten it. Nothing more was said about the matter and Ferguson drew his salary of $50 monthly, making no charge for notarial fees, and no demand for the money. He left the service of the bank in February, 1896. In September, 1898, he brought suit against the bank to recover $754.50, the amount of his notarial fees from July 18, 1893, until the time he left the bank. In holding that there could be no recovery, this court said:

"When appellee remained in the bank after the board of directors had by resolution fixed his salary, and received month after month from it the amount of salary thus fixed by the board, without demanding more or asserting any claim for other compensation for his services, he must be conclusively held to have rendered the services on the terms proposed by the board and to have accepted those terms."

The present case cannot be distinguished from the cases cited. While claiming that he had a contract for $75 a month and 30 cents an hour for extra time, plaintiff admits that about a week later defendant proposed that he pay plaintiff at the rate of 30 cents an hour, and plaintiff agreed to this arrangement. He not only says that he agreed to this arrangement, but his subsequent conduct fully confirms his statement. He kept the time of all the men, including his own. If he was to be paid by the month, why did he keep his regular time at all? Why not keep only his extra time? He not only admits that he kept all his time at the rate of 30 cents an hour, but that he received payment on this basis. He did this for over twelve years. He does not claim that he ever made any protest or demanded more money. He merely claims that on several occasions he went to defendant for money and defendant would say "John, don't draw any more than what you have to have. I am in bad shape." The evidence shows that he did not regularly draw all of his money on the basis of 30 cents an hour for all time, but that after the lapse of a few days or a few weeks, the entire amount would be paid him. Under these circumstances it cannot be said that his evidence is sufficient to show that he ever made de-

mand on defendant for payment according to the contract which he claims he had with defendant. While the evidence of Messrs. Hutchcraft, Brent and others tends to show that plaintiff was employed by the year at a salary, and that his compensation was about a thousand dollars, yet this evidence is not material in view of plaintiff's own conduct. . Having agreed to the arrangement by which he was to receive 30 cents an hour for all time, both regular and extra, and having kept his time and accepted payment on that basis for a period of over twelve years, without protest or demand, he will not be heard to say that he was working under a different contract. His own conduct precludes a recovery. It follows that the trial court erred in refusing to award appellant a peremptory instruction.

Judgment reversed and cause remanded for new trial consistent with this opinion.