## Kenmont Coal Company v. Salyer.

(Decided May 8, 1931.)

CRAFT & STANFILL for appellant.

ROY HELM and T. E. MOORE for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The Kenmont Coal Company owns and operates a coal mine at Jeff in Perry county. In May, 1920, it

employed the appellee, K. N. Salyer, as its company physician. It agreed to furnish appellee a house in which he was to live in its camp, feed for his horse, and to deduct $2 monthly from the wages of each of its married employees and $1 from the wages of each employee who was not married, and to pay the sum so deducted to appellee, who in return was to render all necessary medical services to such employees and the members of their families, except in cases where employees were injured in the course of their employment.

Appellant insured its liability for compensation under the Workmen's Compensation Act (Ky. Stats., sec. 4880 et seq.) in the Maryland Casualty Company. For his services rendered to employees injured in the course of their employment, appellee was to be paid by the insurer. This arrangement continued until August 7, 1921, when the Maryland Casualty Company ceased to carry the risk for the appellant. Thereafter appellant carried its own risk. Appellee continued to act as camp physician. In cases where employees were injured, he submitted bills for his services to the appellant, and it is conceded that a dispute arose as to whether he should receive extra compensation in these cases. Dr. Salyer claims that after this dispute arose he had a conversation with H. K. English, vice president and general manager of the Kenmont Coal Company, and that it was agreed the company would pay him a reasonable amount for services rendered to injured employees. For some reason not disclosed by the record appellee ceased to act as the company's camp physician in July, 1923. At that time he had presented to the company no bills for extra compensation for services rendered to injured employees under the agreement which he claims was made on November 1, 1921, and no claim for such services was made until more than a year after he ceased to act as the camp physician.

On September 3, 1926, he brought this action in the Perry circuit court to recover $2,739 for services in cases in which he had treated injured employees of the company between August 7, 1921, and July 1, 1923. In his petition as amended he alleged that the defendant agreed to pay him a reasonable compensation for services rendered to injured employees. In its answer the defendant denied that it had entered into any contract with the plaintiff whereby it was to pay him for such services, and a number of affirmative defenses were pleaded. A

demurrer was interposed to a number of the paragraphs of the answer, and, upon consideration, the court carried it back to the petition as amended and sustained it. On appeal to this court it was held that the petition as amended stated a cause of action, and the judgment of the lower court was reversed. Salyers v. Kenmont Coal Company, 226 Ky. 655, 11 S. W. (2d) 705. On a return of the case the only issues submitted on the trial were whether or not the contract had been entered into between appellant and appellee by the terms of which appellant agreed to pay appellee a reasonable amount for services rendered to such of its employees as might be injured in the course of their employment and the reasonable value of such services. The appellee recovered a judgment for $1,800, and the company has appealed.

The right of appellee to recover rested wholly upon the existence of the contract which he claims was made by him and the vice president of the company after the Maryland Casualty Company ceased to carry the risk. If such a contract was made, he was entitled to a reasonable compensation for his services. He testified positively that such a contract was made, and H. K. English testified just as positively that appellee agreed to render the services to injured employees without any extra compensation, but in consideration of free house rent, feed for one horse, lights, and telephone service furnished by the company, and the services of the company in deducting $2 monthly from the wages of its married employees and $1 from the wages of its unmarried employees and paying the amount so deducted to appellee. English is supported as to his version of the contract by V. L. Bird, who was the office manager, or cashier, of the Kenmont Coal Company from 1920 until some time in 1925, and who claimed he overheard the conversation between Dr. Salyer and English. In other words, one witness testified that a contract was entered into which rendered the company liable to the appellee for the reasonable value of his services, and two witnesses testified that an entirely different contract was made, and, if their testimony is true, the company is not liable to appellee in any sum.

The instructions given by the court squarely presented the issue as to whether the contract entered into between the parties was that claimed by appellee or was as stated by the two witnesses for the appellant. It was

clearly a question for the jury to determine, and under the circumstances, we cannot say the verdict is flagrantly against the weight of the evidence.

At the conclusion of plaintiff's evidence and again at the conclusion of all the evidence, the defendant moved for a peremptory instruction in its favor, and it is now argued that the trial court erred in overruling its motions because the appellee is estopped by his own acts and conduct from recovering of appellant the compensation claimed by him, and the case of Wilson v. Morrison, 152 Ky. 351, 153 S. W. 441, and other cases of similar import are relied on.

In the Wilson case it was held that, where a servant after contracting for a stipulated salary accepts at the master's suggestion a lesser salary and continues in the employment without objection for over twelve years, he cannot, never having claimed the greater emolument, recover it after such period. Morrison claimed that he entered into a contract of employment with Wilson whereby he was to receive $75 per month and 30 cents per hour for all extra time in excess of 10 hours a day. Wilson claimed that he employed Morrison under an agreement to pay him 30 cents an hour for all time whether regular or extra. Morrison admitted that after the contract was made Wilson suggested that the compensation be fixed at 30 cents an hour, and that he thereafter accepted payment on that basis. He kept the time of all the men, including his own, and he kept all his time at the rate of 30 cents an hour, and received payment on that basis. He never made any protest or demanded more money for over twelve years.

In Second National Bank of Ashland v. Ferguson, 114 Ky. 516, 71 S. W. 429, 24 Ky. Law Rep. 1298, also relied on by appellant, Ferguson was employed by the bank at a salary of $50 a month. After he left the service of the bank he brought suit against it to recover $754.54, the amount of his notarial fees during the time he was employed by the bank. He was a notary public, and claimed that he was to receive the fees for making protests in addition to his salary. While he was employed at a salary of $50 a month, he received the fees for making protests. The board of directors later fixed his salary at $600 per annum, with a further provision that he should make all protests free of charge. After this change in his salary was made, he informed the president that he would go back to work for a salary

of $50 a month, provided the bank would give him $10 a month for notary fees. The president informed him that he would have to see the directors about it. The president agreed to bring the matter before the board of directors, but failed to do so, and Ferguson drew his salary of $50 a month, making no charge for notarial fees and no demand for the money. It was held that under these circumstances there could be no recovery.

It is obvious that the facts in these cases distinguish them from the present case. Here the appellee testified positively that the appellant agreed to pay him the reasonable value of his services rendered to its employees who had been injured in the course of their employment. He made no demand for the amounts due him until after he ceased to act as camp physician, but, if his version of the contract is true, his failure to make such demand did not mislead appellant. According to him, there was a definite understanding that he should receive compensation for his services, and, that being true, he was under no duty to do any more than he would have been required to do in relation to any other debt owing to him by appellant. If he had known that appellant understood the contract, as now contended by it, and that it continued him in its service as camp physician upon the supposition that he was willing to render medical services to injured employees without extra compensation, then the doctrine announced in the cases cited by appellant would apply. However, if appellee's version of the contract is true, none of the elements necessary to raise an estoppel as to him is present. He testified that the contract provided he should receive a reasonable compensation for services rendered to injured employees, and the witnesses for appellant testified that he agreed to render these services without compensation. The issue thus presented was submitted to the jury in appropriate instructions.

Some point is made of the fact that the medical reports filed with the Workmen's Compensation Board in accident cases and signed by appellee, contained the statement that he was paid on a salary basis, but this did not necessarily conflict with his version of the contract. In his testimony he explained that this statement was inserted in the reports at the instance of a company representative who was familiar with the terms of the contract and who suggested "that would be about as good a term as they could use."

It is finally argued that appellant was taken by surprise during the progress of the trial and that the trial court erred in overruling its motion for a new trial on this ground. The surprise consisted of the disappearance of an exhibit supposed to have been filed with the deposition of B. D. Herndon, secretary of the Compensation Board. The absence of the exhibit was not discovered until the deposition was read on the trial. The exhibit was a certified copy of an affidavit that had been filed with the Compensation Board by appellee, and appellant desired to use it for the purpose of contradicting him and affecting his credibility as a witness. The affidavit, if its contents were as claimed by appellant, failed to contradict appellee on any material matter, and appellant was not prejudiced by its inability to use it for the purpose intended. But, even so, the claim of surprise was first made on the motion for a new trial and came too late. Lewis v. Commonwealth, 190 Ky. 160, 227 S. W. 149; Castleman v. Littrell, 167 Ky. 736, 181 S. W. 336; Hudson Engineering Company v. Shaw, 167 Ky. 27, 179 S. W. 1083.

We find no error warranting a reversal of the judgment, and it is therefore affirmed.