## BOSTER v. FIRST NAT. BANK.
### No. 13050.

District Court, E. D. Michigan, S. D.
Nov. 7, 1933.

Floyd M. Boster and George B. Murphy, of Detroit, Mich., for plaintiff.

Nichols, Morrill, Wood, Marx & Ginter, of Cincinnati, Ohio (Robert S. Marx, of Cincinnati, Ohio, of counsel), for defendant.

KNIGHT, District Judge.

In the year 1925, plaintiff was employed in the "distributing department" in the People's State Bank, Detroit, Mich. On August 18, 1925, he was transferred to the "protesting department." His duties in the first-named service were in connection with the distribution of checks and bank paper to the proper place in the bank. In the other service he protested paper for the bank. He was a duly appointed and authorized notary public, and hence with legal authority to protest such paper. He gave his entire time to this. When he began the latter service, there was no talk with reference to his pay for service or with reference to any change of pay. He continued in the work of protesting checks from the date last mentioned until the early part of the year 1933. During this time, the People's Bank had been taken over by the People's Wayne County Bank, and, in turn, the latter was absorbed by the defendant bank. The defendant bank was adjudged insolvent on May 25, 1933, and the defendant receiver has since, and is now acting as such.

During the time plaintiff acted as protesting officer, he was paid a certain sum by the bank twice in each month, on the 15th and 30th. At first it was $75 semimonthly; later it was $87.50; and still later a little larger amount. Plaintiff claims, and for the purpose of this motion it must be assumed to be true, that he was paid altogether in the manner described $17,000. The plaintiff kept for the bank record books showing checks and other paper protested and amount of protest fees paid to the bank. Fourteen of such record books have been introduced in evidence. It would appear that two or three are not included and have not been found. Plaintiff from all the books made a tabulation showing the total amount paid to the bank from August 18, 1925, to the date insolvency was declared on account of paper protested by plaintiff. In speaking of the "bank," I wish to be understood to be referring to the three several banks. While proper proof has not been laid to admit the calculation of the total moneys paid to the bank shown on the missing books, defendant has stipulated in open court that plaintiff may testify to the total of all the record books, for the purposes only, however, of this motion. The three record books have not been found, and the statement of counsel is to the effect that further effort to locate these will be made.

The testimony of the plaintiff is that such total of all the records for all the time stated was $45,090.36. Plaintiff seeks to recover from defendant the difference between the sum stated as paid him and the sum stated as paid the bank for or on account of protest fees. He bases his contention on the well known rule of law that an

agreement of a public officer to accept something different for his pay or fee than that allowed by law is void as against public policy.

The evidence further discloses this; that when each semimonthly payment was made plaintiff, he gave defendant bank a written receipt purporting to show the payment in full of all moneys due him and purporting to be for a consideration; that plaintiff is an attorney; that at no time until in 1933 did plaintiff inform or notify the defendant bank that he made any claim to any protest fees as such; that plaintiff occupied a room in defendant's building and paid no rent; was furnished with various necessary equipments to enable him to do his work; that defendant paid insurance for him, furnished books, paper, ink, pens, etc.; that inland, as well as foreign checks and notes were protested; that the items of charges paid the bank include amounts in excess of lawful protest fees; that no instructions were given plaintiff as to charges for protesting or as to what should be protested; and the only instructions he received were from his predecessor in the service who was not an officer in the bank. There are other statements of record showing other acts of plaintiff in connection with this service. Sufficient have been noted to point the contention made by defendant. Such contention is that there was no agreement made to pay any amount different than the legal fees to plaintiff; that each semimonthly payment made by defendant was made after the fee had been earned and that then plaintiff could legally assign the fees and therefore could accept the amount paid in full satisfaction of all indebtedness; that each transaction then engaged in amounted to an accord and satisfaction, and hence plaintiff can recover nothing. Defendant also claims that the recovery of any amount paid the bank on these fees more than six years prior to June 6, 1933, is barred by the statute of limitation. If, as claimed by plaintiff, the moneys so paid are the moneys of the plaintiff, and no relation of debtor and creditor arose, the statute could not and has not run. In the view I take, the plaintiff must stand or fall on the question of whether these moneys paid the bank belong to the plaintiff and therefore partake of the nature of a trust fund. It is conceded that ample funds at all times have been in the bank to meet any liability on this account.

Defendant moves to dismiss the complaint for failure to establish a cause of action.

Plaintiff is a public officer. Pierce v. Indseth, 106 U. S. 546, 1 S. Ct. 418, 27 L. Ed. 254; In re Opinion of Justices, 150 Mass. 586, 23 N. E. 850, 6 L. R. A. 842; Kip v. People's Bank, 110 N. J. Law, 178, 164 A. 253. The law case reports are replete with cases involving agreements to accept payment for services or fees in lieu of, or different from, those fixed by statute for such services or fees. Questions arising from such agreements repeatedly have been considered by English and American state courts. There is unanimity in the opinions that such agreements contravene public policy. The rule is well stated in Pitsch v. Continental and Commercial Bank of Chicago, 305 Ill. 265, 137 N. E. 198, 201, 25 A. L. R. 164: "The proposition that a contract whereby a public officer * * * agrees to accept for his official services something different from that provided by statute is contrary to public policy and void seems to be well supported by authority as well as justified in principle. * * * The compensation of a public official for the performance of his official duties is not a matter for traffic or trade, for bargaining or for favoritism. * * * Official morality and public policy alike prohibit the undermining of the public service by permitting officers to make merchandise of their official services."

See, also, Corpus Juris, vol. 13, Contracts, § 360 et seq.; Glavey v. U. S., 182 U. S. 595, 21 S. Ct. 891, 45 L. Ed. 1247; Holt v. Thurman, 111 Ky. 84, 63 S. W. 280, 98 Am. St. Rep. 399, and numerous citations.

In Kip v. People's Bank & Trust Company, 110 N. J. Law 178, 164 A. 253, 255, decided in January, 1933, plaintiff, a notary, agreed to accept a salary of $75 per month and give defendant all fees. The contract looked to the future. The court held the agreement void, but it pointed out that the defendant did not allege an estoppel, and also said: "We express no opinion on the power of the officer to waive or remit a fee if and after it shall have been earned. That question is not before us." Mussing v. Corn Exchange Bank, 173 Ill. App. 53, Second National Bank v. Ferguson, 114 Ky. 516, 71 S. W. 429, Ohio National Bank v. Hopkins, 8 App. D. C. 146, cited by plaintiff, each involving agreements in anticipation of the earning of fees or salary.

The evil sought to be prevented by this declaration of an act as being against public policy is the bargaining as to fees or sal-

ary to be earned. The fact that it is to be earned is the fact which gives rise to it as directed to the demoralization of public service. Many demoralizing possibilities will occur to the thinking mind. It would put a premium on incompetency and incompetent service; it would encourage the doing of illegal acts to gain increased compensation. So far as I am informed, most of the reported cases are cases which deal with agreements in anticipation of the earning of salary or fee. Pitsch v. Continental and Commercial Bank presents an unusual statement of facts, but presents the same reasons for the rule. There the consideration for the release was the promise to perform future services on the basis theretofore existing. The appellant could not insist upon its performance and was not bound by it. The court held that such consideration was of no effect and void. In that case, plaintiff, after the performance of notarial services, gave a release from all claims to a certain date, and there was included in such release, and stated as the consideration therefor, an agreement by the official to perform like future services in consideration of his future employment. The repeated statements in the opinion show clearly that the decision arrived at was on the question of the consideration above stated. One quotation demonstrates this. Said the court: "The sole consideration for the release * * * was the illegal contract to continue the appellant's employment at the same compensation, and that contract was illegal in toto and void." Many cases on the question of employment in anticipation of services might be cited. Text-books and distinguished writers on the law are in accord. It is not necessary to quote from them or cite them. Counsel for defendant do not dispute the reason or authority for the rule, but they assert that it has no application in this case. Such counsel say, as was said of the appellee in the Pitsch Case: "It [appellee] bases its defense upon the proposition that fees or salary which have been earned may be assigned, or the officer may waive his claim to them or estop himself from claiming them."

■■ The rule of law that a public officer has the right to assign earned fees or salary is equally as well settled as the rule hereinbefore set forth. It is patent that the reason for the latter rule does not obtain in case of earned fee or salary. Defendant claims that at the expiration of each semi-monthly period, plaintiff for a valuable and legal consideration, released his right to the

fees in question; and further claims that no agreement was made as to any fees to be earned or for the substitution of any amount in lieu of fees. The court will not inquire into the adequacy of the consideration. The question is whether there was a valid consideration. Defendant incurred all expenses incident to the services rendered; payment was made irrespective of the amount of fees earned. In Second National Bank of Ashland v. Ferguson, 114 Ky. 516, 71 S. W. 429, 430, it was held that payment of salary as clerk in amount of excess of fees as notary was good, not in contravention of public policy, and receipt and retention of salary estopped recovery. Said the court: "For he had a right to assign to the bank or to anybody else his fees for services already rendered." McGregor v. McGregor, 130 Mich. 505, 90 N. W. 284, 97 Am. St. Rep. 492, cited by defendant, is not in point. It involved application of all salary to a partnership. Fees earned may be assigned. Greenh. Pub. Pol., rule 293, p. 349; Mechem, Pub. Off., § 874; 2 American and English Enc. 31.

■ The fees of a notary in protesting checks, etc., are fixed by the Michigan statute (Comp. Laws Mich. 1929, § 15486). The statute of that state (Comp. Laws Mich. 1929, § 9401) requires protest of foreign paper as a requisite to recovery on it. Defendant asserts that since there was no legal obligation to protest inland paper, as to an agreement in lieu of fees, as to these there could not be any violation of public policy. How many foreign or how many inland were protested has not been shown. It does appear that there were such. The Michigan statute (Comp. Laws Mich. 1929, § 9367) says that inland checks may be protested and proof of the custom of Detroit banks to protest them has been made. But irrespective of custom, since the defendant did authorize their protest and collected the fees thereon and since the plaintiff acted lawfully in protesting them, they stand here in the same status as foreign paper so far as the right of recovery is concerned.

This is an important case and a final determination will doubtless be decisive of the right of many other parties. It is clear that banking institutions have been mindful of the law as regarding agreements for notarial services. The cases point this out and point the methods by which it has been sought to avoid infringement on public policy in this respect. The defendant had this prohibition in mind. It is most important

that a court should not put such restricture in its interpretation of the law that the reason for the rule may be lightly cast aside. It is of equal importance that agreements lawfully engaged in should be observed. There can be little question of good faith on the part of the bank, for the silence of plaintiff for the nearly eight years in question shows this. He received every payment without protest and at each payment executed what was intended by both parties to be a release of all claims to each date of payment.

■ The gravamen of the illegality of these agreements relative to fees or salary to be earned lies in the very fact that it looks to the future. In this case, as proof of the efficient services performed, there is proof that plaintiff gave receipts in full following the performance of the services. The receipts purport to show a consideration. In view of the proof of these receipts, it seems to me the burden rests upon the plaintiff to show failure of consideration. The illegal consideration is not to be presumed. Nor is the presumption of illegality to be drawn from the fact, standing alone, that the amounts paid plaintiff from time to time, when first engaging in this work as protesting clerk and officer, continued to be the same as that theretofore paid him in another department. The inquiry is whether there was any agreement which purported to bind the plaintiff. Could he at any time have quit his work and not violated any agreement?

There certainly was no express agreement to pay any salary. An agreement cannot be implied here, where it would be such as would be in violation of law. In other words, it cannot be presumed that defendant agreed to pay the salary theretofore paid in lieu of fees to be earned.

■ Defendant urges that the plaintiff in his services in protesting paper was acting not as a public officer, but as the agent and instrument of a private company. It does not seem to me that such is the law nor that the cases, Burke v. McKay, 2 How. 66, 11 L. Ed. 181, and Nicholls v. Webb, 8 Wheat. 326, 5 L. Ed. 628, cited on this point support that view.

Defendant, also, urges that the plaintiff has by his acts waived any claim. If this contention is based on the assumption that there was no agreement prior to the rendering of the service, such contention would be well taken. It follows, as a matter of course, that if plaintiff could assign or release the claim, he could waive it for a valid consideration. But if these services as notary were rendered pursuant to an illegal and void agreement, I do not think that plaintiff could waive. Any other reasoning would force the conclusion that the rule was wholly ineffective. In every case of an illegal agreement, all that would be necessary to make it in effect legal would be to obtain a waiver. The reason for the rule would be entirely subverted.

The precise question on facts like those at bar have not been adjudicated by the courts (federal or state) so far as the research of able counsel has disclosed.

■ It is my decision that the motion be granted. I base this decision on the fact that there is no proof that any agreement with reference to the fees in question was had prior to the rendering of the services which are the basis for the fee, and an accord and satisfaction having been arrived at and the release for consideration having been given after the services were rendered, the plaintiff is estopped from a recovery.