|105  779
|114  521
105  779|
d116 580|
105  779|
d116 580|
105  779.
e118 108
|105  779|
120  581|

CASE 102—ACTION FOR SALARY—FEB. 25.

## City of Lexington v. Rennick.
### Same v. Crane.
### Same v. Jackson.
### Same v. Sullivan, Executrix.
### Same v. Henry.
### Same v. Oberly.
### Same v. Burke.
### Same v. Murphy.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. CONSTITUTIONAL LAW—CHANGE OF COMPENSATION OF MUNICIPAL OFFICER.—Section 161 of the Constitution prohibiting any change in the compensation of any city, county, town or municipal officer after his election or appointment or during his term of office is not applicable to a change in the compensation of such municipal officers as are removable without cause.

2. MUNICIPAL CORPORATIONS—CITIES OF THE SECOND CLASS—REMOVAL OF POLICE OFFICERS WITHOUT CAUSE.—Under section 3138 of the Kentucky Statutes the police of the city of Lexington may be removed at pleasure, with or without cause, by the board of police commissioners.

3. SAME. ESTOPPEL.—Appellees, by accepting their salaries as reduced by the ordinance of March 1, 1896, from April 1, 1896, until they were discharged on May 27th of the ensuing year, without objecting to the reduction, estopped themselves to deny the validity of the reduction.

4. SAME—POLICE COMMISSIONERS AGENTS OF THE CITY.—The rule that a power to remove at will carries with it a power to reduce an officer's compensation at will is not affected by the fact that the power of removal is vested in the police commissioners and the power of reduction is vested in the general council. The police commissioners are agents of the city government and their acts within their statutory powers are the acts of the city itself.

J. D. AND G. W. HUNT FOR THE APPELLANT. (GEO. D. KINKEAD, CITY SOLICITOR, OF COUNSEL.)

1. An officer who holds his office subject to the will of the appointing power, and being removable with or without cause, does not hold his office for a *term*. Mechem on Public Officers, sec. 385; Ky. Stats., sec. 3138; Speed & Worthington v. Crawford, 3 Met., 213; Somers v. State, 5 S. D., 321; State, *ex rel.*, v. Johnson, 123 Mo., 43.

2. The relation between an officer and the public is not contractual, and in the absence of a constitutional provision limiting the power of the Legislature and in the absence of an express provision of the Constitution fixing the salary and term of an officer, the Legislature has control over the salary and term, and has the power to increase or decrease the salary at any time after election or appointment, and has the right to increase or decrease the term of office, or to abolish both salary and term, or the office of a public officer. Standeford v. Wingate, 2 Duv., 445.

3. Sections 161 and 235 of the Constitution apply to officers having a *term* of office, and prohibit a change in the salary or in the term of such officers only. Com. v. Addams, 95 Ky., 590; City of Louisville v. Wilson, 99 Ky., 601.

4. Where a salary, as fixed by an ordinance, and afterward each month by resolutions of the city council, is paid monthly to an officer, and he, with full knowledge of the fact, accepts the same without protest or objection, in full satisfaction and discharge of his demand, and where the city council has it in its power by proper ordinances and methods to legally reduce such salary, and where such reduction is made in pursuance of an agreement, he can not afterwards object that the ordinance reducing his salary and each resolution every month thereafter were invalid, and demand a larger salary under a previous

ordinance. Irvine v. Scott, 85 Ky., 264; Rudd v. Matthews, 79 Ky., 486; Alexander v. Woodford Spring Lake Fishing Co., 90 Ky., 222; Bispham on Equity, sec. 284; 1 N. Y. Chan. Rep., and note to Wendell v. Renselaer, p. 343; reference to Trenton Banking Co. v. Duncan, 86 N. Y., 228; McGovern v. Knox, 21 O. St., 547; Rau v. City of Little Rock, 34 Ark., 303.

5. Where an officer holds his office at the pleasure of the appointing power, the appointing power may indicate in advance when his pleasure shall cease, which operates as a removal by the appointing power at said time.

WEBB & FARRELL FOR THE APPELLEES.

1. The general council of cities of the second class has no right to reduce the compensation of a municipal officer after his election or appointment. Ky. Con., sec. 161; Genl. Stats., sec. 3064; City of Louisville v. Wilson, 99 Ky., 601.

2. The prohibition of the Constitution and the appellant's charter against the reduction of an officer's salary after his appointment to office, is not restricted to officers having a fixed term of office. City of Louisville v. Wilson, 99 Ky., 601; Mechem on Public Officers, sec. 1; Keating v. City of Covington, 18 Ky. Law Rep., 245; Ky. Stats., sec. 4560.

3. Policemen are officers as contemplated and embraced by sec. 161 of the Constitution. Ky. Stats., secs. 3141, 3168, 3202, 3546; U. S. v. Hartwell, 6 Wall., 305; Mechem on Public Officers, sec. 1.

4. A contract against the Constitution or a public statute is void. Beach on Contracts, sec. 1441; Burger v. Koelsch, 77 Hun, 44; State, ex rel., etc., v. Purdy, 17 Am. Rep., 485.

5. A contract to be valid must be mutual and for a valuable consideration. Minor's Institutes, (4th vol.) p. 16.

6. Acceptance of a part of a debt can not be taken in accord and satisfaction of the whole debt. Jones v. Bullitt, 2 Litt., 51; Bank of Commonwealth v. Letcher, 3 J. J. M., 196.

7. Elements necessary to create an estoppel. Pom. Eq. Jur., vol, 2, sec. 805.

JUDGE HOBSON DELIVERED THE OPINION OF THE COURT.

The above eight appeals involve the same questions, and have been heard together. They all grow out of the same state of facts. By an ordinance approved March 22, 1895, it

was enacted by the general council of the city of Lexington that the city auditor should retain each month twenty per cent. of the salary due each policeman, beginning with May 1, 1895, until the whole amount of fees and commissions received by the police, and due the city, as reported by them to the general council, amounting to $3,201, should be covered into the city treasury. The ordinance recites that it was passed because the amount was due the city from the policemen, and it would impose a hardship upon them if payment of the whole sum were required at once. At this time the lieutenant and patrolmen received a salary of $52.50 per month, and the captain $55. On April 29, 1895, another ordinance was passed, fixing the salaries of the police after their election for the ensuing term, beginning with May 1, 1895, at $75 per month for patrolmen, $80 for lieutenants, and $85 for captain. In this ordinance it is recited that the salaries were raised because the fees and commissions which the police had before received were now, under the charter, payable to the city; and the two ordinances seem to have been part of one plan, as they both were effective, "beginning with May 1, 1895."

On March 7, 1896, after, it seems, the debt to the city was paid, an ordinance was adopted fixing the salaries of the police after April 1, 1896, as follows: Patrolmen, $60 per month; lieutenants, $65; captain, $75.

Appellees constituted the police force of the city, and were paid their salaries pursuant to these ordinances until May 27, 1897, when they were discharged. They then filed these suits to recover of the city an alleged balance due them from April 1, 1896, to May 27, 1897, on the ground that the city had no right to cut their compensation down, and that they were entitled to the full pay, as fixed by the

ordinance of April 29, 1895, for the whole time that they had served.

The contention that the ordinance of March 7, 1896, cutting down the salary of the police force, was void, is based on section 161 of the Constitution, which reads as follows: "The compensation of any city, county, town, or municipal officer shall not be changed after his election or appointment or during his term of office, nor shall the term of any such officer be extended beyond the period for which he may have been elected or appointed."

By section 3138 of the Kentucky Statutes it is provided that the police of the city of Lexington may be removed at pleasure, with or without cause, by the board of police commissioners. They have no term of office.

In Mechem on Public Officers, section 385, it is said: "The word 'term,' when used in reference to the tenure of office, means ordinarily a fixed and definite time, and does not apply to appointive offices held at the pleasure of the appointing power." (Speed v. Crawford, 3 Metc. (Ky.), 213; Kane v. Johnson, 123 Mo., 43, [27 S. W., 399]; Somers v. State, 5 S. D., 321 [58 N. W., 804]).

It is insisted for appellees that although they had no term of office, and were removable at pleasure by the board of police commissioners, they are within the protection of the above section of the Constitution. They contend that the section inhibits any change in the compensation of an officer after his election or appointment, and that it is immaterial whether he has a term of office or not. On the other hand, it is insisted for the city that the inhibition of the section relates to a change in the compensation of the officer after his election or appointment, and before his term begins, or during his term of office, and that only officers having terms are referred to.

In determining this question, which is not free from diffi-
culty, we should look, not only at the words of the section,
but its aim and purpose.   It will be observed that appel-
lees had been in office about a year when the change in
their compensation was made; and if the words "after
his election or appointment" apply to them, then the words
"during his term of office" are meaningless, and might have
been omitted from the section altogether.   If the makers
of the Constitution had intended to provide that no change
should be made in the compensation of any city officer, the
section might have read:   "The compensation of any city,
county, town, or municipal officer shall not be changed
after his election or appointment."   If appellees' conten-
tion is right, then these words would have expressed the
entire sense, and the words "during his term of office"
are unnecessary. As all the words in a Constitution must
be presumed to have some meaning, it seems to us that the
words "after his election or appointment" must refer to
the interval elapsing before the beginning of the term of
office, and that the purpose of the section is to prohibit a
change in the compensation of the officer during this in-
terval or during his term of office.   This conclusion is con-
firmed by the phraseology of the succeeding clause:   "Nor
shall the term of any such officer be extended," etc.   It
is very clear that this last clause only refers to officers
having terms.   The words "nor shall the term of any such
officer be extended" must refer to the officers named in the
preceding clause, and indicate that only officers having
terms of office were in the mind of the framers of the sec-
tion.

The same result will be reached if we look at the pur-
pose of the provision.   It was designed to protect an
officer during his term in the enjoyment of the compensa-

tion attached to it when he was elected, and prevent his appealing to the city authorities for more; but it can have no reasonable application to an officer who may be turned off at pleasure, because if the city may turn him off, and then hire him or somebody else any day at another price, we see no reason why it may not reach the end directly, and cut his salary down in the first place. Such constitutional provisions are common, and are uniformly, so far as we have seen, confined to officers having definite terms. Mechem on Public Officers, section 858.     ,

In Commonwealth v. Addams, 95 Ky., 590, [26 S. W., 581], this court, quoting section 161 in connection with other provisions of the Constitution, said: "So, by these express provisions of the organic law it was evidently intended to prevent any interference with the salary or compensation of a public officer during his term of office."

The same language, in effect was used in the case of City of Louisville v. Wilson, 99 Ky., 603, [36 S. W., 944]; but the precise question before us here was not raised in either of these cases. Section 235 of the Constitution, which applies to the salaries of public officers, is expressly limited to those having "terms for which they were elected." The mischief provided for in both sections is the same. The only reason why the words "after his election or appointment" are inserted in section 161, after the word "changed," and before the words "during his term of office," and not in section 235, is that the municipal Legislature meets often, and might change the salary between the election and the beginning of the term of office if section 161 read the same as section 235.

There is another objection to a recovery by appellees. They accepted their salaries as reduced by the ordinance

[ 50 ]

of March 7, 1896, from·April 1, 1896, until they were dis-
charged, on May 27, of the next year, without making any
objection or setting up a claim that more was due them.
When they did this, they knew that if they set
up such a claim, it might endanger their further ten-
ure of office; and after accepting the smaller salary, and
continuing to enjoy the office, they are estopped to claim
money which they elected not to ask for.

In Alexander v. Woodford Spring Lake Fishing Co., 90
Ky., 222, [14 S. W., 80], this court said: "When a man with
full knowledge, or at least with sufficient notice or means
of knowledge, of his rights and all the material circum-
stances of the case, freely and advisedly does anything
which amounts to a recognition of a transaction or acts in
a manner inconsistent with a repudiation, . . . the
transaction although originally impeachable, becomes un-
impeachable in equity."

In the case of Rau v. City of Little Rock, 34 Ark., 303,
this precise question was made, on facts very similar to
those before us.  The court said:  "The salary as fixed by
the ordinance, and afterwards· by the resolution, was paid
the appellant monthly; and he, with full knowledge of the
facts, accepted the same, without, it would seem, any pro-
test or objection, as in full satisfaction and discharge
of his demand; and such was the operation and effect of the
acceptance.  2 Pars. on Cont., 618; 2 Chit. on Cont., 1101-
1127; Brit. on Cont., section 417; King v. New Orleans, 14
La. Ann., 389; Emrie v. Gilbert & Co., Wright (Ohio), 764;
Woodburn's Adm'r v. Stout, 28 Ind., 77; Kirby v. Taylor, 6
Johns. Ch., 242; Milliken v. Brown, 1 Rawle, 391; Riley v.
Kershaw, 52 Mo., 224; Palmerton v. Huxford, 4 Denio, 166.

It does not matter whether the ordinance of May 20,
1875, was inoperative upon the appellant's salary for that

City of Lexington v. Renick.

year or not, nor whether the resolution was valid or not. It evidently was the mutual understanding of the council and the appellant that he was to receive no more than the salary intended to be so established. It is not at all likely that the council would have reappointed him if it had been suggested or intimated by him that he claimed, or would claim, a higher salary than was provided. Parties to contracts are bound only so far as they intend to be bound."

It is, in effect, conceded by appellees' counsel that they could not recover if the same city authority that fixed their compensation had the power to discharge them at will; but as their salary was fixed by the general council, and they could be discharged at will only by the board of police commissioners, it is insisted that the rule does not apply. But the general council and the board of police commissioners were but agents of the city. If the city could by one agent fix the compensation of appellees, and by another agent turn them off at will, it was the act in both cases of the city, and the principle of estoppel would apply as fully as if all the powers had been vested in the same agency; for both were acting for the city, and, it must be presumed, would have taken such steps as the good of the city demanded. The liability here is sought to be imposed upon the city, and if appellees, by their conduct with any branch of the city government, abandoned the claim now sued on, they can not maintain this action.

The judgment of the court below in each of the cases is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

RESPONSE TO PETITION FOR REHEARING BY JUDGE HOBSON.

It is earnestly insisted in the petition for rehearing that, under the statute for the government of cities of the

second class, the general council was prohibited from pass-ing the ordinance in question; that as the council is the creature of the statute, and has only such powers as are thereby conferred on it, if the ordinance is in violation of the statute it is void, although not infringing the provision of the Constitution quoted in the opinion. The statute relied on is as follows: "The general council, unless other-wise provided by law, shall fix the salary and compensation and prescribe the duties of all officers, deputies and em-ployes of the city, except as to the officers in office when this act takes effect. Such salaries shall be fixed before their election or employment, and the salaries of no city officer, deputy or employe, when so fixed, shall be changed after his election, employment or appointment during his term of office or employment, and no officer, deputy or em-ploye of the city shall be entitled to any compensation or salary unless he in person or by authorized deputy, dis-charges and performs the duties of his office." Kentucky Statutes, section 3064.

The cities and towns of the State are divided into six classes, and appropriate laws have been enacted for the government of each class. These statutes contain the scheme of government devised by the Legislature for the urban population of the State, and we think they should be construed as a whole. We have examined them care-fully, and do not find any provision relating to cities of other classes making a rule as to official salaries different from that contained in the Constitution. We see no rea-son why a different rule should be made alone for cities of the second class, and it does not seem to us that the Legislature, in the section quoted, had such an intention in view. There are many persons in the service of these cities who may be strictly city officers. To bring these

persons within the rule prescribed by the Constitution, the statute uses the words "employe" and "employment," in addition to the words "officer" and "office," used in it. The only purpose of the change of phraseology was to make the rule apply to all persons in the service of the city, without regard to the grade or character of the service. The words "or employment" were added to the expression during his term of office," occurring in the Constitution, only to include the employes of the city, and make the rule apply to all persons in the service of the city for a term. Unless plainly so expressed, it is not to be presumed that the Legislature intended to establish for one class of cities a rule different from that ordained in the Constitution, or in the laws governing all other classes of cities in the State. The language quoted does not require such a construction, and, as the rule could be evaded at any time by discharging and reappointing the person at a different salary when he had no fixed term, a single exception for one class of cities should not be made in a uniform rule on doubtful intendment.

The distinguished counsel also insists that there can be no estoppel in this case, because an estoppel never arises from the acceptance of a part of a debt in payment of the whole. This is not the doctrine on which the opinion rests. Appellees knew at the end of each month that the city thought it was getting their services at the reduced salaries. They also knew that, if they refused to serve the city at the reduced price, it might exercise its pleasure of discharging them at will. Knowing this, they accepted the reduced salary to avoid the risk of losing their places, and the city continued them in its service from month to month upon the supposition that they were willing to serve it for the amount paid. To allow them now to hold the

city liable for their original salaries is to allow them to put the city in a worse position, and inflict a loss on it which it might have avoided had they not misled it by their conduct.

The city can not now be placed in *statu quo*, and appellees, having secured an advantage by the line of conduct which they pursued, can not now be allowed to change it to the prejudice of the city. Petition overruled.