Trina Jo CONLEY, an infant, by and through her father and next friend, Joe G. Conley, Jr., Appellant,

v.

Mary Lou SOUSA (Formerly Mary Lou Gorman, d/b/a Cherokee Stable), Appellee.

Supreme Court of Kentucky.

July 1, 1977.

Robert G. Stallings, Louisville, for appellant.

Richardson, Barrickman & Dickinson, Glasgow, for appellee.

LUKOWSKY, Justice.

Conley is a minor who was injured in Kentucky when she was thrown from a horse rented from Sousa in Kentucky. Sousa was a resident of Kentucky at the time of the injury, but moved to Ohio prior to the filing of the complaint. The sole issue on this appeal is whether Kentucky's long-arm statute is long enough to reach Sousa. The trial judge held that it was not and dismissed the suit. We reverse.

KRS 454.210, Kentucky's long-arm statute, provides in pertinent part:

"(1) As used in this section, 'person' *includes* an individual his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who is a nonresident of this commonwealth.

(2)(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this commonwealth;

2. Contracting to supply services or goods in this commonwealth;

3. Causing tortious injury by an act or omission in this commonwealth; . . ." (Emphasis supplied)

█ Read literally it would appear that the statute applies only to those who are nonresidents at the time they act in the manner described in KRS 454.210(2)(a). It is true that KRS 454.210(1) defines "person" as including a nonresident individual, but it does not specifically exclude resident individuals who become nonresidents. It has been held that a statutory definition of a term as "including" certain things or persons does not necessarily put a meaning thereon limited to the inclusion. 73 Am. Jur.2d, Statutes, sec. 212, n.65. This rule is applicable to the situation we have here. If we were not to apply it, we would have to attribute to the legislature the anomalous intent to give more protection to a resident who deliberately flees the jurisdiction of Kentucky's courts than to a nonresident who acts in perfect good faith.

The Ohio long-arm statute contains language identical to Kentucky's. It served as the model for our legislature. It has been interpreted by the Supreme Court of Ohio to extend in personam jurisdiction to those who were residents at the time the claim arose and who thereafter became nonresidents. *Jackson v. Keske,* 20 Ohio St.2d 89, 253 N.E.2d 778 (1969). That case noted that the Uniform Interstate and International Procedure Act, which served as the model for the Ohio Act, defines "person" to include individuals whether residents of the forum state or otherwise. The Ohio court rejected the argument that the Ohio legislature adopted an alternative definition of "person" in order to restrict the in personam jurisdiction of its courts. Rather, it found that the explanation for this change in language was that the legislators did not want to tamper with the Ohio venue requirements for resident defendants. The court noted that if the language of the Uniform Act had been adopted, it could conceivably have led to county to county "longarmism."

While there is nothing wrong with the reasoning of the Ohio court, we need not speculate about the intent of our legislature. The preamble to Kentucky's long-arm statute discloses legislative intent. *Nichols v. Wells,* 2 Ky. 255 (1803). It provides:

"WHEREAS, persons have acted directly and through agents in the Commonwealth of Kentucky.

WHEREAS, those persons have caused injury and property damage and financial inequities in the Commonwealth.

WHEREAS, remedy cannot presently be had against those persons in our Courts due to their non-residence within the Commonwealth.

WHEREAS, the progress and tranquility of our Commonwealth can be best assured through the complete settlement of disputes."

Acts of 1968, Ch. 46.

█ It is apparent that the legislature intended to permit the courts of Kentucky to exercise personal jurisdiction over those who acted in the Commonwealth so as to have caused injury here and who were not answerable in our courts because of their nonresidence. It is obvious that nonresidence is not disease at the time of the act and the injury. It becomes a disease needing legislative cure only after an action is commenced and summons can not be served because of it.

A primary rule of statutory construction was stated nearly 400 years ago:

"And it was resolved by them, that for the sure and true interpretation of all statutes . . . four things are to be discerned and considered: 1st, What was the common law before the making of the act; 2nd, What was the mischief and defect for which the common law did not provide; 3rd, What remedy the parliament hath resolved and.appointed to cure the disease of the commonwealth; and 4th, The true reason of the remedy; and then the office of all the judges is always to make such construction as shall suppress the mischief, and advance the remedy, and to suppress subtle inventions and evasions for continuance of the mischief, and pro privato commodo, and to add force and life to the cure and remedy according to the true intent of the makers of the act pro bono publico."

COKE, Heydon's Case (1584) 3 Rep. 7a, 7b (Known as the "mischief rule")

Accordingly, we will assist the legislature in suppressing the mischief and advancing the remedy by construing the statute to permit Kentucky courts to exercise in personam jurisdiction over persons who were residents of Kentucky when a claim arose and who became nonresidents prior to the filing of a suit against them.

In *Johnson v. Smith,* Ky.App., 551 S.W.2d 834 (decided May 27, 1977) the Court of Appeals reached the same result we reach today. Of course, that result is proper for the reasons stated in this opinion.

The judgment is reversed and the cause is remanded to the Barren Circuit Court for further proceedings consistent herewith.

All concur.