**LAFAYETTE FOOTBALL BOOSTERS, INC.; Bluegrass Gymnastics, Inc.; Henry Clay Baseball Boosters, Inc.; Paul Laurence Dunbar Baseball Boosters, Inc.; Tates Creek Baseball Boosters, Inc.; and Tates Creek Varsity Cheerleading, Inc., Appellants**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2006–CA–001750–DG.

Court of Appeals of Kentucky.

Aug. 24, 2007.

Jerry L. Wright, Herren & Adams, Lexington, KY, for appellant.

Gregory D. Stumbo, Attorney General, Jennifer O. True, Special Assistant Attorney General, Fayette County Attorney's Office, Lexington, KY, for appellee.

Before COMBS, Chief Judge; NICKELL and WINE, Judges.

## OPINION

NICKELL, Judge.

The Appellants (hereinafter "Boosters") are six not-for-profit booster clubs charged with violating a smoking ban ordinance[1] enacted by the Lexington–Fayette Urban County Government (hereinafter "L–FUCG"). Each Booster[2] was cited by the

---

**1.** Ordinance No. 171–2003.

**2.** Jackpot Bingo, lessor of the premises on which all the bingo games occurred, was originally named on the citations with the various Boosters. On March 1, 2005, the Fayette County Attorney dropped all charges against Jackpot Bingo and elected instead to proceed solely against the Boosters. At oral argument, the Fayette County Attorney's Office explained it made this election because the Boosters were actually operating the games. In the government's view, since representatives of the Boosters were physically present during the games they were in a position to actually enforce the smoking ban ordinance by asking bingo players to stop smoking.

L–FUCG Health Department for allowing smoking to occur in a building that was open to the public during a bingo game. We granted discretionary review to consider the April 18, 2006, opinion and order of the Fayette Circuit Court which held the Boosters are not exempt from the smoking ban ordinance, reversed the dismissal of the Fayette District Court's charges, and remanded the matter to the Fayette District Court for further proceedings. We also review an order of the same court entered July 27, 2006, that overruled a motion to reconsider and vacate its April 18, 2006, opinion and order. We reverse and remand to the Fayette Circuit Court for specific findings and further proceedings.

The facts are undisputed. On July 1, 2003, the L–FUCG enacted a smoking ban ordinance with the declared purpose of prohibiting "smoking in all buildings open to the public."[3] The ban was not absolute, however, as several locations were exempted from the ordinance including dwellings (with some limitations), rooms or halls being used for private social functions, retail tobacco stores, tobacco warehouses, theatrical stages (with appropriate signage), indoor smoking areas in government office buildings, and "facilities operated by private organizations."[4] It is this last exemption that is at the heart of this appeal.

Each Booster operates bingo games in Fayette County. All of the bingo sessions occur in the same building that is leased by each Booster for a specified time each week. Funds generated by the games support youth activities throughout Fayette County. Between October 6, 2004, and December 27, 2004, each Booster was cited for violating the smoking ban ordinance by allowing patrons to smoke inside the bingo hall. The ordinance requires owners, principal managers, lessees and anyone in control of a building or establishment inside a building[5] to: post "No Smoking" signs;[6] prohibit smoking on the premises;[7] advise those in violation of the ordinance of its provisions and require their compliance;[8] ensure compliance with the ordinance by patrons, employees, subordinates and agents;[9] and ask smokers to refrain from smoking in no-smoking sections.[10]

In anticipation of a jury trial,[11] the Commonwealth filed a motion in limine asking the Fayette District Court to prohibit the Boosters from claiming they were private organizations and therefore exempt from the smoking ban. The ordinance defines a private organization as, "[a]n establishment which maintains selective members, is operated by the membership, does not provide food or lodging for pay to anyone who is not a member or a member's guest and is not profit oriented."[12]

A hearing was held on the motion in limine on March 1, 2005. The District

3. Ordinance No. 171–2003, Section 1.

4. Ordinance No. 171–2003, Section 14–98(1).

5. Ordinance No. 171–2003, Section 14–98(2).

6. Ordinance No. 171–2003, Section 14–99(1).

7. Ordinance No. 171–2003, Section 14–98(2).

8. Ordinance No. 171–2003, Section 14–99(2).

9. Ordinance No. 171–2003, Section 14–100(2).

10. Ordinance No. 171–2003, Section 14–100(1)(a).

11. By agreed order entered March 22, 2005, the cases of the six Boosters were consolidated for appeal purposes only. The facts and arguments are common to all the Boosters and one opinion and order was issued by the District Court to resolve all six cases.

12. Ordinance No. 171–2003, Section 14–97.

Court characterized the motion as premature and questioned whether it could make a pretrial ruling on whether the Boosters could claim the private organization exemption unless the parties were willing to stipulate all the evidence that would be offered at trial. The Boosters opposed the motion saying they were entitled to their day in court. The court viewed the Commonwealth's motion as a pretrial request for a directed verdict. As such, the court deemed it inappropriate to preclude the Boosters from presenting evidence in support of a defense to a violation of the smoking ban ordinance. From the bench, the District Court overruled the motion *in limine* and stated the Boosters were entitled to go forward with proof in an attempt to establish themselves as private organizations.

To further distill the issues for trial, it was agreed the District Court would rule on whether each Booster qualified as a private organization and was therefore exempt from the smoking ban. At a hearing held on March 10, 2005, counsel for the Boosters[13] admitted on the record that each Booster operated a bingo game in a venue that was open to the public and because each Booster satisfied the definition of a "private organization" under the ordinance they considered themselves to be exempt from the smoking ban and did not prohibit smoking during the games. Stipulations[14] filed by the parties readily established each Booster satisfied three of the five elements required to be a private organization in that they were operated by

their members; none provides food or lodging to any nonmember or nonmember's guest; and none was operated as a for-profit organization. Less clear was whether each Booster was an "establishment" and whether they maintained "selective members."

In the opinion issued on March 22, 2005, the District Court found the term "establishment" is not defined in the ordinance and in common usage it has a variety of meanings. The Commonwealth urged the court to follow *Snook v. International Harvester Company,* 276 S.W.2d 658, 661 (Ky.1955) (in the context of a factory with a fixed location, it was held that members of separate labor unions working in separate buildings for the same company constituted one "establishment") and rule against the Boosters because they lacked a fixed location. The District Court relied instead upon the dictionary definition[15] which lists civil and military organizations as one form of "establishment." Since each Booster is a civil organization created to promote baseball, cheerleading or gymnastics, the court reasoned the "establishment" element of the definition was satisfied.

The final criterion was whether the Boosters maintain "selective members." After reviewing the Articles of Incorporation and the By-Laws of each Booster, and applying the eight factors discussed in *United States v. Lansdowne Swim Club,* 713 F.Supp. 785 (E.D.Pa.1989) and later in *Hendricks v. Commonwealth,* 865 S.W.2d 332, 334–5 (Ky.1993), the District Court

---

**13.** Each Booster signed a waiver of dual representation. One attorney represented all Boosters.

**14.** The parties stipulated that each Booster: (1) "is operated by the membership of the respective charity"; (2) "through charitable gaming does not provide food or lodging for pay to anyone who is not a member or a member's guest. A concession stand is oper-

ated by a separate contractor through Lexington Bingo Associates, LLC;" and, (3) "is a 501(c)(3) charity and registered with the Kentucky Secretary of State as a non-profit organization."

**15.** The Living Webster Encyclopedia Dictionary of the English Language, 1974.

found: (1) none of the Boosters impose substantial dues; (2) the number of potential members of each club is infinite; (3) members exert little or no control over the selection of new members, generally all that is required of a new member is an interest in supporting the club's purpose; (4) each Booster maintains records regarding its admission procedures; (5) members of each Booster control operation of the bingo games; (6) Boosters do not sell food or lodging to nonmembers or their guests; (7) nonmembers use the leased facility a significant amount of the time, including an independent vendor who sells concessions during bingo games; and finally, (8) the purpose of each Booster is to support a stated youth activity and each has a history of involvement in charitable gaming activities. After weighing all of these factors, and considering the noncommercial purpose of the Boosters, the District Court expressed some concerns [16] but ultimately found the Boosters qualified as private organizations under the ordinance, and were therefore exempt from obeying and enforcing the ban because of a specific exemption adopted by the L–FUCG. The District Court dismissed without prejudice all six citations against the Boosters.

The Commonwealth, through the Fayette County Attorney's Office, appealed to the Fayette Circuit Court on April 15, 2005, arguing the District Court erred in finding the Boosters are private organizations because they do not satisfy the "selective membership" factor. On April 18, 2006, the Fayette Circuit Court issued an opinion and order finding that whether the Boosters were private organizations was of no consequence because the Supreme Court of Kentucky had already upheld Lexington's smoking ban ordinance as an appropriate exercise of local governmental authority.[17] The Circuit Court then concluded that once the Boosters opened the doors of the bingo hall to the general public without restriction, they were not operating the game as a private organization and therefore they were required to prohibit smoking inside the building since it was open to the public. Without deciding whether the Boosters were private organizations, the Circuit Court reversed the dismissal of the charges and remanded the matter to the Fayette District Court for further proceedings.

On April 27, 2006, the Boosters moved the Fayette Circuit Court to reconsider and vacate the opinion and order on two grounds. First, they argued the only issue before the Circuit Court was whether the District Court correctly found the Boosters were private organizations. Without making a specific finding on this issue, the Circuit Court did state in its opinion that "each separate Booster may, for sake of argument only, meet the criteria and definition of a 'private organization' as defined in the Smoking Ban Ordinance." The Boosters argued that once they were found to be private organizations they were automatically exempt from the ordinance regardless of who was playing bingo inside the building. Second, the Boosters argued the Circuit Court misconstrued the District Court's comments about the parties' stipulation that none of the Boosters provides food or lodging to nonmembers and their guests. The District Court commented upon this stipulation in its analysis of whether the Boosters satisfied the fourth element of the definition of a private organization (not providing food or

---

16. The District Court noted the bingo games are open to the general public and an independent contractor sells concessions while games are being conducted.

17. *Lexington Fayette County Food and Beverage Ass'n v. Lexington–Fayette Urban County Government,* 131 S.W.3d 745 (Ky.2004).

lodging for pay to nonmembers and their guests). The Circuit Court, however, took this statement as proof that members of the general public were playing bingo and therefore the bingo hall was a public building rather than a facility operated by a private organization.

The Commonwealth filed a response on June 16, 2006, supporting the Circuit Court's rejection of the Booster's attempt to assert an exemption. For the first time, the Commonwealth argued (without conceding) that even if the Boosters qualified as private organizations, they forfeited any exemption by opening the bingo hall to the public. On July 19, 2006, the Boosters filed a reply in which they argued, for the first time, that the Circuit Court overstepped its judicial authority by adding words to the smoking ban ordinance that were not adopted by the L–FUCG.

After a hearing on July 21, 2006, the motion to reconsider was denied by order entered July 27, 2006. We granted the Booster's motion for discretionary review on October 30, 2006, to review the Circuit Court's opinion and order as well as its order overruling the motion to reconsider and vacate the opinion and order. After thoroughly reviewing the record and considering the precise language of the smoking ban ordinance, we reverse and remand to the Fayette Circuit Court for specific findings and further proceedings.

Two arguments, both pertaining to statutory interpretation, are presented to this Court. The first contention advanced by the Boosters is that if they are found to be private organizations as that term is defined in the smoking ban ordinance, then they cannot be cited for violating the smoking ban because "facilities operated by private organizations" are specifically exempted by Section 14–98(1)(f) of the ordinance. However, if the Commonwealth is correct, and the Boosters do not satisfy all five elements of the definition of a private organization, then each Booster must abide by the smoking ban or face the specter of being cited for violating its terms.

■ We are called upon to determine whether the Circuit Court correctly interpreted the smoking ban ordinance. Our review of the trial court's application of the law is de novo. Revenue Cabinet v. Comcast Cablevision of the South, 147 S.W.3d 743 (Ky.App.2003). We are not bound by the Circuit Court's interpretation, "but rather must interpret the statute according to the plain meaning of the act and in accordance with its intent." Commonwealth v. Garnett, 8 S.W.3d 573, 575 (Ky. App.1999) (citing Floyd County Bd. of Educ. v. Ratliff, 955 S.W.2d 921, 925 (Ky. 1997)) If the language enacted is plain and unambiguous, we need not resort to principles of statutory construction and further interpretation is unnecessary. Mohammad v. Commonwealth, 202 S.W.3d 589, 590 (Ky.2006); Commonwealth v. Plowman, 86 S.W.3d 47, 49 (Ky.2002); Overnite Transp. Co. v. Gaddis, 793 S.W.2d 129, 131 (Ky.App.1990). In giving the words of the smoking ban their plain, ordinary meaning, "[w]e are not at liberty to add or subtract from the legislative enactment or discover meanings not reasonably ascertainable from the language used." Commonwealth v. Harrelson, 14 S.W.3d 541, 546 (Ky. 2000). If, however, the language of the ordinance is ambiguous and its meaning unclear, we will determine the L–FUCG's intent by considering the whole statute and the purpose to be accomplished. Dep't of Motor Transp. v. City Bus Co., 252 S.W.2d 46, 47 (Ky.1952). In the end, we are bound by the words actually enacted by the L–FUCG and we must test the ordinance based upon what they said, not what they might have said. Commonwealth, Transp. Cabinet, Bureau of High-

*ways v. Roof,* 913 S.W.2d 322, 326 (Ky. 1996); *Musselman v. Commonwealth,* 705 S.W.2d 476, 478 (Ky.1986); *Estes v. Commonwealth,* 952 S.W.2d 701, 703 (Ky.1997).

■ With these principles of statutory interpretation in mind, our reading of the smoking ban ordinance leaves little room for debate. Once an entity demonstrates it possesses the five attributes required of a "private organization," as set out in the ordinance, it is exempt from following the ordinance because the L–FUCG has created a specific exemption for "facilities operated by private organizations." If the Boosters are able to prove they are private organizations, then they are indeed exempt from enforcement of the smoking ban. We hold the Circuit Court erred in failing to rule on whether the District Court correctly found the Boosters are private organizations and therefore may claim the private organization exemption. Thus, we reverse and remand to the Fayette Circuit Court for a specific finding on whether the Boosters qualify as private organizations.

■ The second contention advanced by the Boosters is that the Circuit Court overstepped its judicial authority and violated the separation of powers doctrine [18] by adding words to the ordinance that the L–FUCG did not adopt. In contrast, the Commonwealth argues the Circuit Court correctly found the Boosters were not exempt from the ban because they invited the public to play bingo without restriction. According to the Commonwealth, the Boosters are no different than a private country club that invites the public to dine in its restaurant. In the Commonwealth's view, both must prohibit smoking in buildings that are open to the public.

As the judiciary, we may construe an ordinance liberally, but not to the point that the words take on a meaning that was wholly unintended by the governmental body that adopted them. It is not our prerogative to add to or subtract from language adopted by the L–FUCG, but rather to read the ordinance as enacted and in its entirety. *County of Harlan v. Appalachian Regional Healthcare, Inc.,* 85 S.W.3d 607, 611 (Ky.2002); *Garnett, supra* at 576; *Wilson v. SKW Alloys, Inc.,* 893 S.W.2d 800, 802 (Ky.App.1995). Here, it appears the Circuit Court focused upon one section of the ordinance to the exclusion of another and thus reversal is required.

Our Supreme Court has already held the L–FUCG may enact a nonsmoking ordinance. *Lexington Fayette County Food and Beverage Ass'n,* 131 S.W.3d at 749. It necessarily follows then that the L–FUCG may tailor the language of any ordinance it enacts to achieve its goals. This may include specific exemptions for entities and locations. In reviewing this particular scenario, the Circuit Court reasoned that once the Boosters opened their bingo games to the public without restriction, the focus shifted from the character of the organization running the game to the character of the building in which the game was played. Since the bingo games were open to the public, the Circuit Court concluded the bingo hall was a building that was open to the public and therefore it was subject to the ordinance. However, such a reading ignores the express language of the exemption adopted by the L–FUCG.

■ Although not mentioned by either party or by either lower court, we note with interest that Section 14–98(1)(b) of the ordinance exempts "a room or hall being used by a person or group for a private social function that is not open to the public." This demonstrates to us that the L–FUCG could have, but did not, in-

---

**18.** Kentucky Constitution § 27.

clude similar qualifying language in Section 14–98(1)(f) pertaining to the private organization exemption. One of the most basic principles of statutory interpretation is to give meaning to legislative intent. Similarly, "where particular language is used in one section of a statute, but omitted in another section of the same statute, it is presumed that the legislature acted intentionally and purposefully in the disparate inclusion or exclusion." *Liquor Outlet v. Alcoholic Beverage Control Bd.*, 141 S.W.3d 378, 385 (Ky.App.2004) (*citing Palmer v. Commonwealth*, 3 S.W.3d 763 (Ky.App.1999)). Here, the L–FUCG had the opportunity to restrict the private organization exemption to facilities operated by private organizations that are not open to the public. Their failure to do so implies no such intent to do so. *See Commonwealth v. Allen*, 980 S.W.2d 278, 280 (Ky.1998). When reviewing an ordinance, we are not at liberty to simply add words to it. We must read it as it was enacted and we must presume all the words chosen by, or excluded by, the L–FUCG have some meaning. *City of Lexington v. Rennick*, 105 Ky. 779, 49 S.W. 787, 788, 20 Ky.L.Rptr. 1609 (1899). Further, we must presume that each word was "carefully chosen and intentionally placed." 16 Am. Jur.2d *Constitutional Law* § 61 (1998). Contrary to the Fayette Circuit Court's opinion, the exemption included within the ordinance permits a private organization to operate a facility and to invite the public inside without transforming that facility into a building that is open to the public for purposes of the L–FUCG smoking ban. Because there is no limiting language in the ordinance as it pertains to "facilities operated by private organizations," we will not add such limitations by judicial fiat.

For the foregoing reasons, we reverse and remand this matter to the Fayette Circuit Court for a specific finding on whether the Boosters are "private organi-

zations" as that term is defined in the L–FUCG smoking ban ordinance. If the Circuit Court finds the Boosters are private organizations, then they are exempt from enforcement of the ordinance according to the clear, unambiguous and unqualified language of Section 14–98(1)(f) and the charges shall be dismissed with prejudice. If, however, the Circuit Court finds the Boosters are not private organizations, the dismissal of the charges shall be reversed and the matter shall be remanded to the District Court for trial or other appropriate resolution of the charges.

COMBS, Chief Judge, concurs.

WINE, Judge, concurs in part and dissents in part and files separate opinion.

WINE, Judge, Concurring In Part and Dissenting In Part:

I concur with that portion of the opinion which remands this matter to the Fayette Circuit Court for a specific finding on whether the Boosters are private organizations, which was the only issue on appeal from the Fayette District Court.

However, I respectfully dissent from that portion of the opinion which suggests private organizations such as the Boosters may permit smoking in a facility owned by a third party and open to the general public.

Section 14–98 of the Lexington smoking ban ordinance provides exemptions to the general ban against smoking, including: "(1)(b) In a room or hall being used by a person or group for a private social function that is not open to the public, . . ." and "(1)(f) Facilities operated by private organizations."

At issue is how to construe the phrase "[f]acilities operated by private organizations." The Boosters believe the exemption follows the private organizations

wherever they may hold a fundraiser or other function. The circuit court found that facilities not owned by private organizations, and to which the general public may be invited, are not exempt. I believe the circuit court narrowly and correctly construed this provision.

First, one of the fundamental maxims of statutory construction is that "an act ... must be considered as a whole...." *Commonwealth v. Louisville Taxicab & Transfer Co.,* 210 Ky. 324, 275 S.W. 795 (Ky. 1925). Further, words are to be given their plain meaning. *Revenue Cabinet v. O'Daniel,* 153 S.W.3d 815 (Ky.2005).

Contrary to the majority opinion, it is not necessary to add the words "not open to the public" to accomplish the goal of the ordinance; to wit, ban smoking in public places. Section (f) must be read in light of the outlined general purpose of the ordinance found in Section 1 of the ordinance:

In order to serve the public health, safety and general welfare, it is the declared purpose of Sections 14–97 to 14–104 to *prohibit smoking in all buildings open to the public.* (Emphasis added).

"Not open to the public" modifies "private social function" not room or hall as suggested by the majority opinion. Thus, individuals or groups which rent a facility for a wedding, birthday party or meeting and only invite a select group, may permit smoking. The general public would not have access to the hall or room when used for a private purpose. Likewise, "[f]acilities operated by private organizations" limits access by the general public.

A second rule of statutory construction is "to ascertain and give effect to the intention of the Legislature and that intention must be determined from the language of the statute itself if possible." *Revenue Cabinet v. Comcast Cablevision of South,* 147 S.W.3d 743, 748 (Ky.App. 2003), *quoting Moore v. Alsmiller,* 289 Ky.

682, 160 S.W.2d 10, 12 (1942). "When there is no specific statutory definition, words of a statute shall be construed according to their common and approved usage." *Revenue Cabinet v. Comcast, supra, quoting Kentucky Unemployment Insurance Commission v. Jones,* 809 S.W.2d 715, 716 (Ky.App.1991). "Operate" is defined as "to conduct the affairs of; manage." *The American Heritage Dictionary of the English Language,* 4th ed. "Facility(ies)" is defined as something created to serve a particular purpose; a building or place that provides a particular service or is used for a particular industry." *Id.*

The Boosters do not manage or conduct the affairs of the bingo hall. They lease the facility and utilize the hall for the purpose of operating a bingo. Boosters may well operate various fields, gyms or concession stands where youth activities are held. Unquestionably, if they owned such facilities, they could permit smoking.

If, as suggested by the Boosters, the exemption follows the private organizations, then an organization such as the Shriners could rent a large facility (where the owner does not ban smoking), invite hundreds of children to enjoy a circus and permit smoking for those of the general public who purchased tickets.

Third, when interpreting a statute or ordinance, we must give "significance and effect ... to every part of [an] Act." *McElroy v. Taylor,* 977 S.W.2d 929, 931 (Ky. 1998), *quoting George v. Scent,* 346 S.W.2d 784, 789 (Ky.1961). To require the addition of "not open to the public" would ignore the stated purpose of the ordinance. Rules of statutory construction require the interpretation that harmonizes the statutes and prevents a part of the statute from becoming meaningless or ineffectual. *Commonwealth v. Phon,* 17 S.W.3d 106, 108 (Ky.2000).

In *Conley v. Sousa,* 554 S.W.2d 87 (Ky. 1977), the Court cited a rule of statutory construction written more than 400 years ago in COKE, Heydon's Case (1584) 3 Rep. 7a, 7b, requiring an interpretation which would advance the remedy and suppress the mischief. Known as the "mischief rule" the interpretation should "add force and life to the cure and remedy according to the true intent of the makers of the act pro bono publico." *Id.* at 89.